FLORIDA MOTOR LINES, INC., *Petitioner*, vs. RAILROAD COMMISSION of the State of Florida, Respondent; GEORGIA-FLORIDA MOTOR LINES, INC., and INTERSTATE TRANSIT, INC., *Intervenors*.

Opinion filed March 3, 1931.

1020

*Knight, Thompson and Turner* and *Robert H. Anderson,* for petitioner;

*Stanton Walker and T. T. Turnbull,* for Respondent.

1024

1026

1028

WHITFIELD, J.—The writ of certiorari herein was issued by this court upon petition of the Florida Motor Lines,

Inc., to review an order of the Railroad Commission, made under Chapter 13700, Acts of 1929, permitting and requiring the Georgia-Florida Motor Lines, Inc., to substitute five twenty-four passenger busses for five seven passenger sedans in transporting passengers for hire on regular schedules over State Highway No. 4 between Jacksonville and Miami in Florida. The Florida Motor Lines, Inc., being authorized to operate passenger busses over the route upon different schedules, protested against the making of the order chiefly upon grounds that it was authorized to operate busses over the route and had not failed "to provide service and facilities to the satisfaction of the Commission," and that there is no necessity for further passenger facilities over the route.

Until recent years public transportation facilities for hire in Florida were afforded almost entirely by railroad and boat lines, the use of vehicles on the public roads in the State for transportation of persons and property for compensation being relatively negligible. Since motor vehicles have come into general utility and the construction of hard surface highways throughout the State with public funds, the business of using such vehicles in the transportation of persons and property for compensation over the public roads in the State has attained such proportions as to require statutory regulation to conserve the roads and safety in the use of them by the public.

Primarily the vehicular highways are designed for general public transportation and not for conducting thereon the business of transporting persons or property for compensation. The power of Congress over interstate commerce and post roads and as to Federal instrumentalities, is not subject to State authority; but the State may forbid the use of its public highways in the business of

transportation for hire even in interstate commerce, if no unjust discrimination is thereby perpetrated and Federal instrumentalities are not hindered. Likewise the State may permit, limit and regulate the use of its public roads for transportation thereon for hire, whether inter- or intrastate, provided no unjust discrimination is practiced and no undue burden or interference is just upon interstate commerce and Federal instrumentalities are not interfered with. The highways being the property of the State, it may make any charge for the use of the roads that is not expressly or impliedly forbidden by the controlling law Federal or State. See' Alkazin v. Wells et al., U. S. Dist. Ct. So. Dist. of Fla., Feb.   , 1931, and Johnson T. & F. Lines v. Perry, U. S. Dist. Ct. N. D. of Ga., Jan. 24, 1931; Clark v. Poor, 274 U.S. 554; Interstate Busses Corp., v. Blodgett, 276 U. S. 245.

In the absence of paramount Federal regulations, the number and the nature, size, weight and operation of the vehicles that may be used in transportation for hire on the public highways of the State, may be regulated by statute even as to interstate commerce over such highways, where such commerce is not discriminated against or unduly burdened.

Chapter 13700, Laws of Florida, pertinent provisions of which appear in the Statement filed herewith, contemplates: (1) the conservation of the highways constructed by taxation and other public funds in the State for the use of the public for transportation purposes, (2) the safety of persons and property in the use of the highways, (3) a limited and regulated use of motor vehicles on the highways by persons and corporations engaged in the business of transportation for compensation on such highways, only as the public convenience and necessity may require.

An intent of the statute is the permissive limited and not unjustly discriminating use of the highways in the business of transportation for hire, only as the public necessity and convenience may require and only as such use does not unduly impair the roads or the safety of their use by the public; it also being an intent of the statute that the business of established transportation companies, affording similar service in the same territory over roads provided and maintained by them and not by taxation or other public funds, shall not be impaired further than as it results from motor vehicle transportation for hire as the convenience and necessity of the public may require. Whether the transportation service for hire proposed to be rendered by motor vehicles over the public highways is essentially similar to that already being rendered, or is materially different in its nature, promptness, convenience, adequacy or other advantages, from similar service rendered in the territory by established lines of transportation, such similarity or difference and advantages as well as the conservation and safety of the roads, should be considered in determining whether the public convenience and necessity require particular motor vehicle transportation service for hire over the public highways.

Another intent of the statute is that before a certificate is issued permitting the use of motor vehicles on the public roads in the business of transportation for hire, it shall be affirmatively shown by appropriate evidence and duly found that the public convenience and necessity require the particular service sought to be authorized. In determining whether the public convenience and necessity require the proposed service to be rendered there should be considered (1) whether the character and number of proposed vehicles may be operated without undue jeopardy to those

traveling upon the roads, or to the structure and safety of the roads, (2) whether service of a like nature is being rendered in the territory or over the route or schedule line by similar or other means of transportation that is adequate to meet the reasonable requirements of the public convenience and necessity, (3) whether the service in the territory or over the route or schedule line as proposed so differs in matters affecting public convenience and necessity, from other similar service being rendered, as to justify authorizing the additional or different service, in view of the rights of other carriers under the statute and of the tax payers and general public in conserving the structure and safety of the highways. The statute expressly provides that in granting an application for a certificate "the Commission may take into consideration * the effect that the granting of such certificate may have upon other transportation facilities within the territory sought to be served by such applicant, and also the effect upon transportation as a whole within said territory"; and that "when application is made by an Auto Transportation Company for a certificate to operate in a territory or on a line already served by a certificate holder under this Act the Commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities to the satisfaction of said Commission."

Chapter 13700 regulating the issue of certificates of convenience and necessity for the use of motor vehicles for compensation on the public roads of the State, contains the following provision:

"A Certificate of Public Convenience and Necessity shall upon hearing be granted as a matter of right to such Auto Transportation Companies operating in good faith on the 19th day of April, 1929, over the route

for which such certificate shall be sought, who shall comply in full with the provisions of this Act."

On July 24, 1929, the Florida Motor Lines Inc. was granted by the Railroad Commission a certificate of convenience and necessity to operate motor vehicles over the routes operated by it on April 19, 1929, "using the motor vehicles, the time schedules and tariff rates listed in and attached to the application." One of the routes covered by the certificate extended over State Highway No. 4 from Jacksonville, Florida, to Miami, Florida, over which route passenger busses were operated for hire by the Florida Motor Lines Inc. On July 24, 1929, the Georgia-Florida Motor Lines Inc. was granted a certificate of convenience and necessity "to operate the same service and over the same routes operated over on April 19, 1929, using the motor vehicles, the time schedules and tariff rates listed in and attached to its application." The certificate included authority to operate five seven-passenger sedans over State Highway No. 4 from Jacksonville, Florida, to Miami, Florida. On December 16, 1929, the Railroad Commission by order authorized the Georgia-Florida Motor Lines Inc. "to substitute four 25 passenger busses for the 7 passenger sedans heretofore operated * and to operate said motor busses over said State Road No. 4 between Jacksonville and Miami." This last order was quashed on writ of certiorari. Florida Motor Lines Inc. v. Railroad Commissioners, 100 Fla.     , 129 So. 876.

Subsequently upon application and hearing the Railroad Commission notwithstanding the objections of the Florida Motor Lines Inc., made the following order:

"ORDER NO. 239,
DOCKET NO. A. T. 21
APPLICATION NO. 254.

## BEFORE THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA

In re : Application of Georgia-Florida Motor Lines, Inc., for leave to change the type of motor vehicles, Certificate for which has heretofore been granted, to motor vehicles of the larger type and seating capacity and also to increase passenger capacity over State Road No. 4.

This cause coming on further to be heard on the original record of the cause, the hearing of November 6th, 1929, and on the additional record and the testimony taken on September 24th and 25th, 1930, and it appearing that all parties entitled to notice and to be heard have had such notice and hearing, and the Commission being fully advised in the premises, and having reached conclusions as expressed in its opinion filed in the cause, thereupon makes the following order, that is to say :

The application of Georgia-Florida Motor Lines, Inc., is hereby GRANTED and Georgia-Florida Motor Lines, Inc., is authorized, ordered and directed to change the type of equipment operated by it between Jacksonville and Miami over State Highway No. 4, from Sedans, as heretofore authorized, to 25 passenger busses, as set forth in said application, and upon so changing its type of equipment to 25 passenger busses, it is authorized, ordered and directed to place in service on said route on the schedules operated by it five of such busses and to immediately and forthwith place the same in operation.

It is further ordered and directed that Florida Motor Lines, Inc., and any other carrier of passengers now operating under certificate of convenience and necessity between Jacksonville and Miami, Florida, over State Highway No. 4, be granted like privilege of increasing their equipment and facilities between said points on their respective schedules in like manner when public convenience and necessity is shown in support thereof.

DONE AND ORDERED by the Railroad Commis-

sioners of the State of Florida in session at their office in the City of Tallahassee, Florida, this 25th day of September 1930.''

The order states that:

''the commission being fully advised in the premises, and having reached conclusions as expressed in its opinion filed in the cause, thereupon makes the order.''

The ''opinion'' of the Commissioners contains the following:

In considering a subject such as here presented, the Commission must be guided by three general considerations:

1st: The protection and conservation of State highways constructed and maintained at large expense to the State; the safety of the State highways for those using them other than bus passengers.

2nd: The comfort, safety and convenience of the traveling public availing itself of the facilities furnished by the operators holding certificates issued by this Commission.

3rd: The rights involved of the operators affected by the order here sought.

In applying these general considerations to the matters here involved, the Commission finds:

that there is no showing to the effect that the equipment sought by the applicant would be injurious to the roads;

that it appears to the Commission that the road hazards would be reduced by permitting the operation of busses in lieu of sedans;

that the busses serve the comfort, safety and convenience of the traveling public using motor bus transportation;

that the schedules assigned to the respective operators are not duplications of service, but have distinct features, in the time of arrival and departure and in wide-

ly separated terminals at Jacksonville and Miami,—the schedules of each company are set to meet different northern connections of each at Jacksonville, Florida, extending into other States.

"The Commission is, therefore, of the opinion:

(1) That the record discloses that the public traveling in the number here shown cannot be adequately, safely and conveniently served by seven-passenger sedans as originally authorized.

(2) That the patronage enjoyed by the applicant has increased to the point where the applicant is not only entitled to the privilege of increasing the type and size of its equipment, but should be affirmatively ordered and directed by this Commission so to do.

(3) Public convenience and necessity as disclosed by the record is overwhelmingly in support of the application.

(4) That Florida Motor Lines, Inc., should likewise be authorized to increase and improve the type and size of its equipment.

(5) That the mandatory duty rests on this Commission to not only authorize the increase in type and size of equipment heretofore authorized for use by the applicant, but to order and direct it in the interest of the traveling public so to do.

(6) That like permission and direction to increase type and size of equipment be afforded Florida Motor Lines, Inc., whenever such permission is sought and showing of public convenience and necessity made in support thereof.

An order consistent with this opinion authorizing, ordering and directing the requested increase will be made."

See U. S. v. A. B. & C. Ry. U. S. Sup. Ct. Fed 24131 for distinction between an opinion of Commissioners and their mandatory orders.

Upon the petition of the Florida Motor Lines, Inc., a writ of certiorari was issued by this Court to review the order above quoted. The Georgia-Florida Motor Lines, Inc., and its successor the Interstate Transit, Inc., were permitted to intervene in the certiorari proceedings in this court.

It is contended by the petitioner here that the order is invalid ''because the record shows that State Road No. 4 was already served by a certificate holder, to-wit: petitioner, and that the Railroad Commission had no right to make the order in question except in the event petitioner failed to provide sufficient service and facilities to the satisfaction of the Commission; * and because there is no necessity for any further transportation lines to be used on State Road No. 4 in the service aforesaid to give the public adequate transportation facilities.''

While the Railroad Commissioners are statutory officers and they can exercise only such governmental authority and functions as are provided for by the express or implied provisions of statutes, under the statute the orders duly made by the Railroad Commission ''shall be deemed and held to be * reasonable and just and such as ought to have been made in the premises, and to have been properly made and arrived at in due form of procedure, * unless the contrary plainly appears.'' If it be duly shown than an order made by the Railroad Commission is without statutory authority or is without a sufficient predicate in the proceedings wherein the order was made, or is otherwise contrary to law, it may be adjudged to be ineffectual in appropriate judicial procedure; otherwise the order should be enforced until its invalidity is duly shown. The validity of the order may be determined on certiorari by a consideration of its terms and of the record

of the proceedings in which the order was made. Florida Motor Lines, Inc. v. Railroad Comrs., 100 Fla. ___, 129 So. 876.

The "opinion" filed by the Commission and referred to in the order here reviewed, states the conclusions of the Commissioners upon the evidentiary matters considered. It indicates that in determining whether a certificate of public convenience and necessity should be granted to the Georgia-Florida Motor Lines, Inc., on its petition to substitute twenty-four passenger busses for seven-passenger sedans on the petitioner's schedules over State Highway No. 4, between Jacksonville and Miami in Florida, the Commissioners considered the conservation and safety of the roads, the convenience and safety of the public traveling in petitioner's vehicles and also the public convenience and necessity. It is also apparent that the Commissioners determined that the Florida Motor Lines, Inc., was not rendering service on the same schedule line as the Georgia-Florida Motor Lines, Inc. The two companies operate on different schedules from different terminals in Jacksonville and in Miami, the connections being with different bus lines from northern points at different terminals in Jacksonville, Florida; and the Commission decided that each company may increase its equipment and facilities on their respective schedules.

The statute provides that:

"When application is made by an Auto Transportation Company for a certificate to operate in a territory or on a line already served by a certificate holder under this Act the Commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities to the satisfaction of said Commission."

The Georgia-Florida Motor Lines, Inc., was operating seven-passenger sedans on the schedule line between its terminal stations in Jacksonville and Miami in Florida when it was granted authority to substitute twenty-five passenger busses for the sedans on such schedule line, and the Florida Motor Lines, Inc., was then operating busses between its terminal stations in Jacksonville and Miami, the terminal stations of each being at different points in each of the two cities. While the two companies were authorized to use the same highway between the two cities in Florida, they operate on different schedules and their terminal stations are at different places in each city. The authority to the Georgia-Florida Motor Lines, Inc., to substitute busses for sedans is not an original authority ''to operate on a line already served by another certificate holder,'' but is to increase the capacity for service on a schedule line already being operated in the territory.

In view of this situation as to different schedule lines and terminal stations of the two companies in the same territory, the intent of the above quoted provision of the statute was not violated by the order requiring the Georgia-Florida Motor Lines, Inc., to change the type of its equipment from sedans to busses and ''to place in service on said route on the schedules operated by it five of such busses'' and granting to the Florida Motor Lines, Inc., ''like privilege of increasing their equipment and facilities between said points on their respective schedules in like manner when public convenience and necessity is shown in support thereof.''

The ''opinion'' and order do not state that the Commissioners did, as indicated by the statute, consider ''the effect that the granting of such certificates may have

upon other transportation facilities within the territory sought to be served by such applicant, and also the effect upon transportation as a whole within said territory." But that alone does not necessarily render the order invalid, if the findings and order are duly supported.

A railroad line is operated between Jacksonville and Miami which serves the same intermediate points that the bus lines do. There are also other railroad and boat lines that are operated between Jacksonville and Miami serving also some of the intermediate points. The railroad and bus lines do not operate from the same terminal or intermediate stations. This fact has its effect upon the convenience of the traveling public, particularly upon passengers making connections at terminal or other stations.

While the statute does not contemplate that the business of transportation for compensation on the public highways shall supersede or vitally impair the business of existing transportation lines in the same territory, beyond that *required* for the public convenience and necessity, yet the public highway lines will necessarily compete for business to a greater or less extent with other lines. This is recognized by the statute which provides that the effect of the highway lines "upon other transportation facilities within the territory * and also the effect upon transportation as a whole within the territory," may be considered in applications for certificates of public convenience and necessity.

The law does not give common carriers immunity from competition; but Chapter 13700, Laws of Florida, does not authorize the business of common carriers who provide their own roads, to be impaired by competition from carriers for hire who use the public roads of the

State, further than the public convenience and necessity may require.

In the absence of specific statutory regulations or limitations, the character and extent of public highway bus and truck service in competition with other carriers, that may be authorized under Chapter 13700, Acts of 1929, depend upon the requirements of the public convenience and necessity for such bus and truck service and the use of the highways consistent with the conservation of the structure and safety of the roads for general public use. The authority to determine the nature and extent of such bus and truck service on the public highways that should be permitted, is by the statute committed to the Railroad Commission, subject to such limitations as are afforded by the rather general provisions of the statute and to the provisions and principles of law that secure public and private rights against an arbitrary exercise or abuse of governmental authority, through appropriate judicial review in accord with the organic provision that right and justice shall be administered by due course of law. Sections 1 and 4, Declaration of Rights.

The record supports a conclusion that the operation of the bus lines by the Georgia-Florida Motor Lines, Inc., authorized by the order here considered will afford competition that will injuriously affect the business of other transportation lines in the territory, but the statute intends that the Railroad Commission shall determine the extent of the competition that may be authorized to meet the requirements of the public convenience and necessity, consistent with the conservation and safety of the roads, and the courts can on certiorari declare orders made by the Commission to be illegal or an abuse of authority only when such illegality or abuse is clearly shown.

The findings and conclusions and orders thereon made by the Railroad Commissioners under Chapter 13700, Laws of Florida, may be reviewed on certiorari, but such review is not appellate to determine whether error was committed in such findings and conclusions or in the orders as where writ of error or appeal is authorized or used. The review on certiorari is to determine whether the order as made is illegal as matter of law or was made without observing the provisions of law regulating the matters to be considered or the procedure for such findings and conclusions, or whether in its operation the order will violate organic or fundamental rights, or is merely arbitrary and without sufficient support in the evidence or proceedings had. If there is substantial competent evidence that is legally sufficient to support the findings and conclusions and no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action, the findings and conclusions of the Commission will not be set aside on certiorari even though the reviewing court might have reached different conclusions on the evidence. See I. C. C. v. Union Pac. Ry., 222 U. S. 541, 547, 32 Sup. Ct. Rep. 108, 56 Law Ed. 308; Tagg Bros. v. U. S., 280 U. S. 420, 442, 50 Sup. Ct. Rep. 220, 74 Law Ed. 524, 536; New York v. McCall, 245 U. S. 345, 38 Sup. Ct. Rep. 122, 62 Law Ed. 337; State ex rel. v. F. E. C. Ry., 67 Fla. 83, 64 So. 443; State v. L. & N. Ry., 62 Fla. 315, 57 So. 175; New Eng. Divisions Case, (Akron, C., & Y. R. Co. v. U. S.), 261 U. S. 184, 43 Sup. Ct. Rep. 270, 67 Law Ed. 605.

The order of the Railroad Commission must under the statute be "deemed and held to be * such as ought to have been made in the premises * unless the contrary plainly appears on the face thereof or can be made to

appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary so appears." The order is not invalid on its face; and there is no "clear and satisfactory" showing in the record and proceedings filed in response to the writ of certiorari, or otherwise, that the order is one that should not have been made in the premises. See State ex rel. v. F. E. C. Ry., 69 Fla. 480, 68 So. 729.

There is substantial evidence to sustain the findings of the Commissioners that are essential to the validity of the controlling features of the order here reviewed; and it cannot fairly be said on the record in this case that the findings of the Commissioners are clearly wrong or that the order authorizes a use of the public road that will unduly jeopardize the safety of travelers upon the highway, or unduly impair the structure or safety of the road for its primary use by the public further than may be permitted under the statute; or that the public convenience and necessity do not require the service authorized; or, in view of the differences in the schedules and terminal connections of the Florida Motor Lines, Inc., and the Georgia-Florida Motor Lines, Inc., that the order denies to the former a right secured to it by the statute; or that the effect of the order upon "other transportation facilities within the territory" or "upon transportation as a whole within the territory," is different from or more injurious than may be permitted under the statute, no organic rights being violated. Questions of policy not impairing organic rights in permitting and regulating competition between carriers using the public highways of the State and other carriers, are for legislative determination. The courts may determine the legality of legislative regulations, and of administrative action thereunder.

As the order merely authorizes and requires the Georgia-Florida Motor Lines, Inc., to substitute busses for sedans on its established schedule line from its own terminal stations, and as the other certificate holder in the territory, the Florida Motor Lines, Inc., operates its busses on a different schedule line from its own terminal stations, the schedules and terminal stations of the two lines being different, the rights of the Florida Motor Lines, Inc., under the statute as a certificate holder in the territory are not clearly shown to be violated.

Interstate passengers using connecting lines at Jacksonville are regularly transported in continuous transit over both motor vehicle lines upon the same highway in this State, and to deny one line the privilege of substituting busses for sedans when the other line is privileged to use busses, might involve unlawful discrimination in interstate commerce, it being shown that the use of busses conserves the public convenience and necessity. The substitution of busses for sedans is by the findings set out in the statement and supported by evidence clearly shown to serve the convenience and comfort of passengers, to enhance safety in travel on the public roads and to meet the necessities of increasing travel on the line; and it does not clearly appear that the structure or safety of the roads or the business of other carriers in the territory will be impaired by the change from sedans to busses further than is permissible under the statute regulating the subject. A new line of service or a greater increase in the authorized service affecting the use and safety of the public roads and unduly increasing competition with established carriers might violate the statute.

In certiorari proceedings the order reviewed may be

quashed if invalid, otherwise the writ may be quashed. Atl. Shell Co. v. Steel Products, 98 Fla. 6, 122 So. 787.

The essential provisions of the order of the Railroad Commission are not clearly shown to violate the intendments of the statute under which it was made, or to violate any organic or statutory rights of the Florida Motor Lines, Inc., or other carriers in the territory covered by the order, therefore the writ of certiorari issued by this court to review the order of the Railroad Commission, should be and the said writ of certiorari is hereby quashed.

STRUM, C.J., AND BUFORD, J., concur.

BROWN, J., concurs specially.

ELLIS AND TERRELL, J.J., dissent.

BROWN, J. (concurring):

If this case involved the granting of a new, initial application for a certificate of public convenience and necessity for the operation of a motor vehicle line for passenger service from Jacksonville to Miami, I would, in view of the existing service by both rail and bus, have serious doubts of the validity of an order of the Railroad Commission granting such an application. I still hold to the views expressed in the cases of Seaboard Air Line Ry. Co. v. Wells, 130 So. 587, and 131 So. 777. But when we cast aside mere forms and look at the essential substance of this particular matter, it merely involves the right of the Railroad Commission to permit an existing certificate holder, who was operating over this route April 19, 1929, and to whom a certificate had been granted under the statute, to improve its service by changing the type of motor vehicle used to a better type, larger, safer, more commodious and more convenient, and one which

1048

the evidence indicates that its increased business really required.

STRUM, C.J., AND WHITFIELD AND BUFORD, J.J., concur.