Central Truck Lines, Inc., a corporation, and Akin Transportation Company, a corporation, *Relators,* v. Railroad Commission and Strickland Transportation Company, a corporation, *Respondents.*

147 So. 590.

Opinion filed April 13, 1933.

*Milam, McIlvaine & Milam,* for Petitioners;

*T. T. Turnbull* and *Waller & Pepper,* for Respondents.

CAMPBELL, Circuit Judge.—The relators by writ of certiorari, seek to have reviewed the proceedings, and order of the Railroad Commission of Florida, wherein the respondent, Strickland Transportation Company, a corporation, was authorized and directed to make a change in its time schedule for the operation of its freight motor truck line from Tampa, Florida, to Daytona Beach, Florida, via Orlando, Florida, and return. The review of the proceedings, and order is opposed by both the Railroad Commission and the Strickland Transportation Company.

It appears from the record, that the respondent, Strickland Transportation Company, is the holder of a Certificate of Convenience and Necessity issued by the Railroad Commission of Florida, under the provisions of Chapter 13700, Laws of Florida, Acts of 1929. This certificate authorizes the holder to operate its freight motor trucks as a common carrier over the highways of State of Florida, from Orlando to Tampa and St. Petersburg, Florida, touching also certain named intervening cities and towns. It further ap-

pears that the respondent, Strickland Transportation Company, was at and prior to the passage of Chapter 13700, Laws of Florida, Acts of 1929, engaged as such common carrier, over the route described above, and was therefore under the provisions of Section 3, Chapter 13700, Laws of Florida, granted its certificate of Public Convenience and Necessity, as a matter of right.

It further appears from the record, that at and before the passage of Chapter 13700, Laws of Florida, Acts of 1929, the Merchants Transportation Company, a corporation, was engaged in the operation of freight motor trucks as a common carrier over certain highways of the State of Florida, particularly over the State highways, between Orlando, Sanford, DeLand, New Smyrna, and Daytona Beach, and between Orlando and Tampa, Florida. Under the provisions of Section 3, of said Chapter 13700, Acts of 1929, Merchants Transportation Company was granted its certificate of Public Convenience and Necessity over these routes as a matter of right. This certificate was numbered 95, and dated February 18, 1930.

It also appears from the record that on April 15, 1931, the Railroad Commission, upon a hearing held after due and legal notice, and after considering testimony offered by interested parties, including the two relators, made an order approving the transfer by the Merchants Transportation Company of its certificate of Public Convenience and Necessity, Number 95, to the Strickland Transportation Company; whereby the latter became the holder of such certificate entitling it to operate its motor freight trucks as a common carrier over the State Highways between Daytona Beach, Florida, as an eastern terminal, and Tampa, Florida, as a western terminal. It appears that at the time of the transfer of certificate numbered 95, the portion of

the route named therein from Orlando, Florida, to Tampa, Florida, and intervening points was, at the suggestion of Mr. Sinclair Wells, Superintendent of Motor Transportation Division, abandoned by the transferee, Strickland Transportation Company, as it already held a certificate of Public Convenience and Necessity, into and through the same territory.

It is made to further appear by the record that the relators, Central Truck Company, a corporation, and Akin Transportation Company, a corporation, are each holders of certificates of Public Convenience and Necessity, issued to each as a matter of right, under the provisions of Section 3, Chapter 13700, Laws of Florida, Acts of 1929. The Central Truck Company, under its certificate, is and was at the time of the filing of its protest with the Railroad Commission, operating its motor freight trucks as a common carrier for hire, between Jacksonville and Ocala, Leesburg, Eustis, Orlando, Kissimmee, Haines City, Lakeland, Tampa and St. Petersburg, Florida, and all points in the lake region and highlands section of the peninsula portion of the State of Florida.

The Akin Transportation Company, under its certificate, is and was. at the time of the filing of its protest with the Railroad Commission, operating as a common carrier for hire by freight motor trucks, between Jacksonville and Orlando, Florida, via. St. Augustine, Daytona Beach, De-Land and Sanford, and through its connections at Orlando, Florida, was delivering freight to points between Orlando and Tampa and St. Petersburg, Florida.

The record reveals that the respondent, Strickland Transportation Company, made application on the __ day of _____, 1932, to the Railroad Commission for permission to change its time schedule between Daytona Beach

and Tampa, Florida, so as to reduce the time required in covering the route, particularly in the westbound trip, from Daytona Beach to Tampa.

It appears that the time schedule of Strickland Transportation Company over the highways covered by the certificate issued it as a matter of right, was as follows: East-bound: Leave Tampa 10:00 P. M.   Arrive at Orlando 1:11 A. M.   West-bound: Leave Orlando 7:00 A. M. next morning, arrive Tampa, 10:22 A. M. the same morning.

The time schedule for the portion of the route between Orlando and Daytona Beach, Florida, under certificate number 95, transferred by Merchants Transportation Company to Strickland Transportation Company with the approval of the Railroad Commission, was as follows: East-bound, Leave Orlando 7:00 A. M.   Arrive at Daytona Beach 11:17 A. M.   West-bound: Leave Daytona Beach 11:47 A. M. and arrive in Orlando at 2:13 P. M.

After the transfer of certificate No. 95, to Strickland Transportation Company, the time schedule over the route covered by the combined certificates of Public Convenience and Necessity held by Strickland Transportation Company was as follows: East-bound: Leave Tampa 10:00 P. M., Arrive Orlando 1:11 A. M., Leave Orlando 7:00 A. M., arrive at Daytona Beach 11:17 A. M.   West-bound: Leave Daytona Beach 11:47 A. M., arrive at Orlando 2:13 P. M. Leave Orlando 7:00 A. M., next morning, and arrive at Tampa at 10:22 same morning.

The change in the time schedule asked for by Strickland Transportation Company and ordered by the Railroad Commission, is as follows:   East-bound, leave Tampa 9:00 P. M., arrive at Orlando 1:30 A. M., leave Orlando 6:45 A. M., and arrive at Daytona Beach 11:00 A. M.   West-bound: Leave Daytona Beach 11:30 P. M., arrive at Or-

lando 3:05 A. M.  Leave Orlando 3:45 A. M., arrive at Tampa 8:00 A. M.

It appears from the record that the relators filed protests before the Railroad Commission, protesting the ordering of the change in time schedule of Strickland Transportation Company.

In the protests of the respective objectors, it is contended that the change requested in the time schedule of Strickland Transportation Company, would, if granted, permit the giving of a new service by the Strickland Transportation Company different from that given in the combined certificates, under which it had been operating.  That such new service would be created by virtue of the fact that Strickland Transportation Company through connections at Daytona Beach with other certificated motor truck lines, would be enabled to accept freight originating in Jacksonville and points beyond, for over-night transportation, and for delivery at Tampa, St. Petersburg and other points the next morning at early business hours; whereas, under the old schedule such freight could not be delivered by the Strickland Transportation Company until the second morning, after having been accepted.  It is contended by each of said objectors, relators before us, that such change in schedule will bring the Strickland Transportation Company in direct competition with them, in making quick and early morning delivery of freight originating in Jacksonville and points beyond the night before for delivery at their southern termini and intervening points.  It is further contended that each of the objectors is able, willing and ready to furnish all necessary facilities for the delivery of such freight as necessity may require, and that they as holders of certificates of Public Convenience and Necessity in the same territory, should have been directed, and permitted,

by the Railroad Commission, to furnish any necessary additional service before authorizing the Strickland Transportation Company to render such alleged new service.

It is further contended by the relators that the portion of the route between Orlando, Florida, and Daytona Beach, Florida, embraced in certificate numbered 95, and transferred by Merchants Transportation Company to Strickland Transportation Company, was merely a local route and the time schedule under which the motor trucks were operated was a local schedule, and not intended as a part of a through schedule to Tampa, Florida.

After hearing the testimony offered by the applicant, and the objectors, the Railroad Commission on December 7, 1932, made an order that Strickland Transportation Company, change its schedule between Tampa and Daytona Beach and return, fixing the schedule the same as that requested in the application.

The Railroad Commission in its findings, after stating the facts that developed, regarding the time schedule embraced in the certificates under which Strickland Transportation Company was operating over the route named, and the effect of the proposed new schedule, in shortening the time, said among other things, the following:

"The applicant contends that the present schedule to which it is confined is an unreasonable schedule and renders it impossible for it to render reasonable service to its patrons.

"It produced witnesses experienced in the truck transportation business who testified that in the opinion of each the schedule of the Strickland Transportation Company between Daytona Beach and Tampa and return, and particularly the return from Daytona Beach to Tampa, was un-

reasonably slow and was inadequate to efficiently furnish expected service to its shippers.

"The evidence shows that the Strickland Transportation Company operates the only through service between Daytona Beach and Tampa, Florida. There are other carriers operating out of Jacksonville, Florida, and through Daytona Beach, that are able by making certain interchanges, with other lines to serve Tampa and the territory served by the Strickland Transportation Company, but the record shows no competitors with the Strickland Transportation Company moving on the same schedule or from the same terminals as between Daytona Beach and Tampa and return.

"The applicant asks for no additional schedule but does seek a radical change in schedule as practically to amount to the granting of a new schedule. In the granting of a new schedule even though this may be accomplished by a change in existing schedules a hearing is necessary and public convenience and necessity should be considered, and the Commission would be authorized to consider the effect that the granting of such change in schedule would have upon other transportation in the field. It is conceivable 'that schedules of transportation companies might be so changed as to seriously affect the rights of other transportation companies, both rail and motor. In fact this record is not silent as to the effect the granting of this change might have upon other transportation companies.'"

The Railroad Commission in its findings further says:

"From a careful consideration of the record in this case the Commission finds that the present schedule which the Strickland Transportation Company is required to observe in its operations between Tampa and Daytona Beach and from Daytona Beach to Tampa *is unreasonable, and it is its duty to require reasonable schedule.* It further finds

that the requirements of public convenience and necessity have been met and that while the operation under the new schedule may have the effect of diverting certain traffic from other competing carriers, it will not affect the revenues of the existing transportation companies to such an extent as would warrant the Commission in denying this application." (Italics supplied.)

The order of the Railroad Commission, granting the change of time schedule in the operation of the motor truck line of Strickland Transportation Company was not in our opinion the granting of a new service to the company. It was rather the granting of the right to furnish a *better* service, to its patrons on a transportation line already established and certified. Both of the relators, and the respondent, Strickland Transportation Company, were operating in the territory involved, prior to the passage of Chapter 13700, Laws of Florida, 1929, requiring that carriers by motor vehicles be required to procure from the Railroad Commission certificates of Public Convenience and Necessity, before being permitted to use the highways of the State. These relators, the respondent, and also Merchants Transportation Company, which by transfer was succeeded by Strickland Transportation Company, were all granted certificates of Public Convenience and Necessity, as a matter of right, and have, in a measure at least, been in competition ever since.

In these proceedings the Railroad Commission was not considering an application for a certificate of Public Convenience and Necessity authorizing a *new operation,* in the territory or on a line served by other transportation companies.

In determining whether or not a certificate of Public Convenience and Necessity to an auto transportation com-

pany to operate any motor vehicle for transportation of persons or property as a common carrier for compensation, the Railroad Commission under the provisions of Chapter 14764, Laws of Florida, Acts of 1931, must, in granting such certificate, take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by the applicant, and also the effect upon transportation as a whole in the territory."

In the case at bar the applicant, Strickland Transportation Company was not seeking a certificate for a *new service,* but was seeking permission for a change in time schedule so as to give *better* service to the territory, and those of the public it was already serving.

Under the provisions of Section 6, Chapter 13700, Laws of Florida, *supra,* the Railroad Commission was required to require each auto transportation company applying for, or granted, certificate of Public Convenience and Necessity, a schedule of its rates and fares, and a *time schedule* of all motor vehicles operated.

It was further provided in this section of the law as follows:

"Whenever such rates or fares or *time schedules* are found to be *unreasonable,* the Commission, upon its own motion, or upon complaint, shall upon hearing as herein provided, prescribe reasonable rates and *time schedules* to take the place of those found *unreasonable."* (Italics supplied.)

The foregoing was the law regarding the time schedules of certificated transportation companies, and the change of schedules in force at the time the certificates of Public Convenience and Necessity under which Strickland Transportation Company operated, were granted. The same pro-

visions, concerning the filing of time schedules, the maintaining of reasonable time schedules, and the ordering by the Commission of a change in unreasonable time schedule, is now found in Section 8, Chapter 14764, Laws of Florida, Acts of 1931, which was the law when Strickland Transportation Company made its application for, and was granted, a change of time schedule, herein complained of. It will be seen there is nothing contained in the provisions of either Chapter 13700, Laws of Florida, or of Chapter 14764, Laws of Florida, Acts of 1931, requiring that the Commission take into consideration the effect upon other transportation companies, in ordering a holder of a certificate, to fix a *reasonable time schedule,* in lieu of one determined to be *unreasonable.* In only two instances in Chapter 14764 is reference made to the authority conferred upon the Commission to consider the effect upon a competitor. Those two are (1) when a new certificate is sought, and (2) when approval of the Commission is sought for a transfer of an existing certificate.

In passing we could observe that while under the provisions of Chapter 13700, no notice to others, nor a public hearing was required for the granting of consent to the transfer of a certificate; yet such a public hearing after notice was had before the Commission approved on April 15, 1931, the transfer by Merchants Transportation Company of Certificate 95 to Strickland Transportation Company. This was before Chapter 14764, *supra,* became a law.

The Railroad Commission found, from the evidence produced before it, that during the thirteen months period immediately preceding the application, Strickland Transportation Company handled 1,239,135 pounds of freight passing through Daytona Beach, 151,075 pounds of such

freight was perishable freight. The Commission, it seems, approved the contention of the applicant that this freight had the same right to expeditious movement as any other freight transported by motor carriage. Despite the competition in freight transportation, motor and otherwise, in the territory served by Strickland Transportation Company, that portion of the public constituting its patrons were entitled to have a reasonable time schedule maintained by the Strickland Transportation Company to meet the reasonable requirements of the public service it had undertaken. In other words, the shippers of the one million pounds of freight in thirteen months over this transportation line, were entitled to have the line furnish a schedule affording a more expeditious delivery if the time schedule already used was unreasonable.

In the case of State v. L. & N., and S. A. L. Ry. Co., 62 Fla. 315, this Court held as follows:

"A railroad common carrier may, in addition to the facilities and accommodations already furnished, be required to render a particular service that it is essentially the duty of the carrier to do, for the *reasonable convenience of its patrons among the public and to meet the reasonable requirements of the public service undertaken.*" (Italics supplied.)

In the same case we further held, speaking through Chief Justice WHITFIELD, as follows:

"The general and special powers conferred by the statutes of the State upon the Railroad Commission are ample to authorize them to make and enforce just and reasonable orders, rules and regulations for the furnishing of reasonably adequate facilities and accommodations to the traveling public by the operation of passenger trains separate from freight cars, *and for the establishing of schedules to be*

*observed* in operating such passenger trains between points within the State; and all such orders, rules and regulations when made, are by statute declared to be *prima facie* reasonable and just." (Italics supplied.)

In the case of Florida Motor Lines, Inc. v. State Railroad Commission, 101 Fla. 1018, 132 South. Rep. 851, in considering Chapter 13700, Laws of Florida, we held that it contemplates:

1. The conservation of the highways constructed by taxation and other public funds in the State for transportation purposes.

2. The safety of persons and property in the use of the highways.

3. A limited and regulated use of motor vehicles on the highways by persons and corporations engaged in the business of transportation for compensation on such highways only as the public convenience and necessity may require.

We also said in the same case, "An intent of Chapter 13700, Laws of Florida, is the permissive, limited, and not unjustly discriminating use of the highways in the business of transportation for hire, only as the public necessity and convenience may require, and only as such *use does not unduly impair the roads* or the safety of their use by the public." And again, "Chapter 13700 intends that, before a certificate is *issued* permitting the use of motor vehicles on the public roads in the business of transportation for hire, it shall be affirmatively shown by appropriate evidence and duly found that the public convenience and necessity require the particular service sought to be authorized." The intent of provisions in Chapter 14764, Laws of Florida, Acts of 1931, similar to the provisions of Chapter 13700, is the same as that mentioned by us in the Florida Motor Lines, Inc. case, above referred to. The change in a time

schedule for a service already authorized, does not increase the traffic burden on the highways. It does not add to the hazards to other persons or property on the highway, neither does it tend to impair the roads or the safety of their use by the public any more than the operation under the old schedule.

In the case of Florida Motor Lines, Inc. v. State Railroad Commission, *supra,* the Court was considering the order of the Railroad Commission, authorizing the Georgia-Florida Motor Lines, Inc. to substitute twenty-four-passenger busses for the seven-passenger sedans it had been using in its business of transportation for hire on a route for which it already held a certificate of Public Convenience and Necessity. ·We said regarding the permission granted for substitution of busses for sedans, the following: "Permission to substitute twenty-four-passenger busses for seven-passenger sedans in the business of transportation for hire upon the public highways is not an *original* authority to operate on a line, *but is authority to increase the capacity for service already rendered."* (Italics supplied.)

Mr. Justice BROWN in a separate concurring opinion concurred in by a majority of the Court, in the case of Florida Motor Lines, Inc. v. State Railroad Commission, 101 Fla. 1018, 132 Sou. Rep. 851, text 863, said regarding the permission granted to substitute busses for sedans, the following: ' "But when we cast aside mere forms and look at the essential substance of this particular matter, it merely involves the right of the Railroad Commission to permit an *existing certificate holder,* who was operating over this route April 19, 1929, and to whom a certificate had been granted under the statute, to *improve its service* by changing the type of motor vehicles used to a better type, larger,

safer, more commodious, and more convenient," etc. (Italics supplied.)

The order of the Railroad Commission granting the change of schedule to Strickland Transportation, was, we think, nothing more than permission given an existing certificate holder to improve its service by giving a reasonable time schedule in lieu of a schedule found by the Commission to be unreasonable.

In their protests filed with, and urged before, the Railroad Commission, one of the contentions of the relators was that "The records of the Commission and the exhibits filed in the case disclose that the schedule from Daytona Beach to Orlando originally awarded as a matter of right under Certificate 95, to Merchants Transportation Company was awarded solely as a local schedule for the purpose of local distribution between the towns of Daytona Beach, New Smyrna and Orlando."

We do not think this contention is sustained by the record.

In the testimony of Sinclair Wells, Superintendent Motor Transportation Division, taken at the hearing before the Railroad Commission, on the application for its approval of the transfer of Certificate Numbered 95, by Merchants Transportation Company to Strickland Transportation Company the highways covered by Certificate Number 95 were given as extending from Daytona Beach by way of Orlando to Tampa. The witness Wells, in response to the question "Do you know whether or not they have been operating over these roads?" replied: "All except the Orlando to Tampa. I issued them authority, possibly a year ago, to turn over the business on that road to Dowling lines and it was renewed on two occasions. The present purchaser of this certificate (meaning Strickland Transporta-

tion Company) *already operates over the Orlando-Tampa road,* and it was a part of the agreement that if the purchase went through they would abandon the schedule of the original Merchants Transportation Company between Orlando and Tampa." It therefore appears that Strickland Transportation Company, by the use of its certificate over highways from Orlando to Tampa, intended to and did, upon the transfer by Merchants. Transportation Company to it of Certificate 95, form a through freight service from Daytona Beach to Tampa, Florida, under the combined certificates held by it.

The relators further contend in their protests and objections before the Railroad Commission, that the records of the Commission and the exhibits filed in the cause disclose that Strickland Transportation Company in applying for transfer of Certificate No. 95, from Merchants Transportation Company, by sworn testimony agreed that the service to be rendered under such certificate would be a local service only connecting with its distribution service from Tampa, and that no interchanges would be made at Daytona Beach if such transfer were awarded.

We do not think this contention is sustained by the record. We have read the testimony taken at the hearing, the same being made a part of this record. We do not find that such agreement was made. If the granting of the transfer of Certificate Number 95 created a new service by Strickland Transportation Company, the order giving approval of such transfer and the proceedings in which the order was made, were possibly more susceptible to being quashed upon certiorari than is this order allowing change in time schedule, after the granting of transfer, and use by the transferee of Certificate 95.

There was substantial competent evidence before the Rail-

road Commission that is legally sufficient to support its findings, and apparently no rule of law was violated in the proceedings, and the whole record does not show an abuse of authority or arbitrary action. Therefore the findings and conclusions of the Commission will not be set aside on certiorari. See Florida Motor Lines v. Railroad Commission, 101 Fla. 1018, 132 Sou. Rep. 851; State *ex rel.* Railroad Com'rs. v. Florida East Coast R. Co., 67 Fla. 83, 64 Sou. Rep. 443; State *ex rel.* Railroad Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 Sou. Rep. 175; Interstate Commerce Commission v. Union Pacific R. Co., 222 U. S. 541, text 547, 32 Sup. Ct. Rep. 108, 56 Law Ed. 308, Tagg Bros. v. United States, 280 U. S. 420, text 442, 50 Sup. Ct. Rep. 220, 74 Law Ed. 524, text 536.

The writ of certiorari issued by this Court to review the order of the Railroad Commission, ordering the change of time schedule by Strickland Transportation Company should be, and the said writ of certiorari is hereby quashed.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J. concur.