CENTRAL TRUCK LINES, INC., *et al.*, v. RAILROAD COMMISSION and ST. JOHNS RIVER LINE COMPANY, a corporation.

160 So. 26.

Opinion Filed March 1, 1935.

556

*Milam, McIlvaine & Milam, Stanton Walker, J. L. Doggett, Robert H. Anderson, Russell E. Frink* and *W. J. Oven,* for Relators;

*T. T. Turnbull,* for the Railroad Commission;

*Edith M. James,* and *Walter F. Rogers,* for St. Johns River Line Co.

DAVIS, J.—This is an original proceeding in certiorari to have quashed and set aside certain orders of the Railroad Commission of the State of Florida relating to the operating privileges of St. Johns River Line Company, the holder of a certificate of public convenience and necessity for common carrier transportation service by truck under the provisions of Sections 1335 (1) to 1335 (30) C. G. L., 1934

Supplement, Chapter 14764, Acts 1931, General Laws of Florida.

The service involved is a combination of water and truck transportation which, by its orders under attack in this proceeding, it is charged that the Railroad Commission has unlawfully permitted to be enlarged by the Saint Johns River Line Company to include all South Florida points at depressed water rates, whereas it is contended that the commission had theretofore limited such depressed water rate service for application solely to points within the St. Johns River Valley territory, including Ocala, Leesburg, Mount Dora, Astor, Eustis, Tavares, Sanford, Orlando, DeLand and Daytona Beach. The controversy originated in the purchase by the interested owners of St. Johns River Company, of certain stock and franchises, including an outstanding common carrier by truck certificate of convenience and necessity originally granted to and held by McLeod Lines, Inc.—the purpose being a consolidation of two services. The transfer of the McLeod Lines' certificate of convenience and necessity to St. Johns River Company was authorized by the Railroad Commission after due notice to all interested parties and after a hearing held pursuant to the statute.

The opinions and order of the commission brought up on the writ of certiorari issued in this case show that for many years before the enactment of Chapter 13700, Acts 1929 (which Act was the first Florida statute giving the Railroad Commission jurisdiction over motor vehicle transportation in the State of Florida), the St. Johns River Company had conducted motor vehicle operations as complementary to an established boat service it had long been operating over the St. Johns River from Jacksonville to Sanford.

Said St. Johns River Company was, as provided by the statute, granted a certificate of public convenience and necessity to continue its existing motor service as a matter of right. And, in the course of time it extended its operations thereunder to various points in the State of Florida as hereinbefore mentioned—its approved schedule of freight rates for such service being 10% lower than the prescribed rates and charges required to be assessed and collected by rail carriers or motor vehicle common carriers between the water rate points. The 10% lower differential in rates for said company was approved by the commission by reason of its performance of part of the haul by water which it could only accomplish by means of the slow operation of freight boats on the river, a factor that necessarily delayed the ultimate delivery of freight shipped by the boat line far beyond the time required to transport and deliver the same shipment when carried entirely by rail or motor carrier without the intevention of the St. Johns Company's boat service.

The business of St. Johns Company having grown to such an extent that it felt that expansion of its service was warranted by the prospects of additional traffic likely to make such expansion profitable said company, with the authorization of the Railroad Commission, proceeded to acquire by purchase the franchise, properties and certificate of public convenience and necessity that had theretofore been granted to a separate motor truck carrier known as McLeod Lines, Inc. The McLeod Lines, Inc., certificates of public convenience and necessity it thus acquired had been originally granted to said McLeod Lines, Inc., as a matter of right under the statute, and under its provisions said McLeod Lines, Inc., was authorized to operate a local motor carrier

common carriage freight service between Orlando and Tampa under existing schedules.

After having thus possessed itself of the McLeod Lines' separate certificates of public convenience and necessity covering the McLeod Lines' local freight service by motor truck from Orlando to Tampa, St. Johns River Company thereupon filed its petition with the Railroad Commission styled a petition for authority to change the schedule formerly operated by McLeod Lines, Inc., so that it, St. Johns River Company, as the new owner of same, might (so it is alleged) give a better service to the patrons in the Tampa territory than it could otherwise perform in that regard by operating the old schedule of McLeod Lines, Inc., as it existed prior to the acquisition of the latter line by said St. Johns River Company.

The Railroad Commission, in dealing with the situation presented to it as arising out of the changed conditions occasioned by the union of the two services under one operating company, first entered two orders.

In the first of said orders (No. 706, dated November 2, 1934) the commission approved the sale and transfer of all rights of the McLeod Lines, Inc., to St. Johns River Company in and to its certificate of public convenience and necessity for its Orlando to Tampa common carrier truck service, but expressly held by way of limitation upon the effect of its certificate of approval, that the operative rights of St. Johns River Line and McLeod Lines, Inc., are separate and distinct and that although the St. Johns River Company was to become the owner of two (but separate) certificates of convenience and necessity, it should continue to operate the authorized services covered by each as separate services until the further order of the commission.

In the second of its orders (No. 707, dated November 2, 1934), the commission announced its conclusion that any change of schedules looking to a through service and joint rates under a merger of the two certificates of convenience and necessity theretofore previously but separately owned by St. Johns Company and McLeod Lines, Inc., could only be approved by the Railroad Commission upon a statutory showing of public convenience and necessity, and that no such showing having been made in the case up until that time, that the application of McLeod Lines, Inc., to increase its schedules between Orlando and Tampa should be denied, but without prejudice to St. Johns River Company, as the new owner, to make proper application therefor according to law in accordance with the right to do so reserved in the commission's order No. 706.

On December 18, 1934, the Railroad Commission entered its third order by which it granted the application of St. Johns River Company for an additional through schedule between Tampa, Florida, and Sanford, Florida, with authority to interchange with other carriers as applied for in the St. Johns River Company's petition upon which the Railroad Commission had made no order up until that time.

The granting of any such additional privileges as thus allowed by the commission order of December 18th, 1934, had been strongly opposed by the other rail and motor carriers serving the Tampa territory, the gist of the objection being that the privilege sought was in substance and reality not a mere alteration of an existing schedule for the promotion of any subject recognized by law, but was in its practical operation and effect a projection of a new through service by St. Johns River Company at depressed freight rates into the Tampa trade territory without any authority of law to warrant same.

The Railroad Commission, however,* overruled all objections and granted the petition for the projected service on the assumption of law and fact that in so doing it was merely discharging a mandatory duty imposed upon it to prescribe 'a new schedule in lieu of the old one that it found to be unreasonable, and that inasmuch as both St. Johns River Line Company and McLeod Lines, Inc., were holders of certificates of public convenience and necessity that the state had originally granted as a matter of right and later permitted to be united under one operating company, that it was a matter of discretion for the Railroad Commission to permit such change in existing schedules as would speed up the service under the consolidated arrangement.†

The petitioners in this proceeding constitute the entire organized and regulated rail and motor transportation systems serving peninsular Florida in through carriage, interstate and intrastate, Jacksonville to South Florida points. The specific ground of their complaint against the validity of the Railroad Commission's order of December 18, 1934 (as supported and affirmed by the commission's opinion of January 3, 1935), is that by said order of December 18, 1934, the Railroad Commission has, in violation of the positive terms of Chapter 14764, *supra,* unlawfully granted to the St. Johns River Company, an uncertificated water carrier, what is in contemplation of law a new and original certificate of public convenience and necessity for a dis-

---

*Apparently completely abondoning its theory of the applicable law as expressed in its two previous orders 706 and 707.

†For example as was done in the case of Central Truck lines v. Railroad Commission, 109 Fla. 395, 147 Sou. Rep. 590, wherein the court held that the particular order therein considered was merely an administrative one and sustainable as such.

tinctly novel operation in through motor carriage to all South Florida points, and that upon terms and conditions as to permissively depressed freight rates that would *per se* constitute a violation of the statute, even if the order of the commission granting permission for the new through service and interchange were otherwise valid and proper under the facts adduced before the Railroad Commission in support thereof.

An order of the Railroad Commission, made in its capacity as an agency of the Legislature for the purpose of administering the provisions of Chapter 14764, Acts 1931, with reference to the granting, denial and regulation of the privilege of using the public highways for profitable motor carriage by motor transportation companies and others who may apply for such privileges, must, like a statute, be tested by its practical operation and effect rather than by its form, when called in question in the courts as amounting to an unauthorized invasion of the rights of a party complainant against the same. In such cases the law regards neither the name, designation or form of the order as being the material thing, but tests the order's validity by what may appear to be its practical operation and effect as put into force, applied, and carried out under the circumstances complained of as being violative of law.

If, therefore, the order attacked in the present proceeding is shown in its practical operation and effect, as applied to the traffic situation as a whole in the territory to which it relates, to amount to the award of an original certificate of public convenience and necessity for a distinctly new through transportation service in the same territory now already adequately served by existing transportation agencies certificated with respect thereto, the order of the commission be quashed as invalid, unless the facts that have

been adduced in evidence in its support are legally sufficient under the statute to sustain the granting of a certificate of public convenience and necessity for the particular operation in controversy. This is true, notwithstanding the fact that the order may have had its inception in a petition purporting to pray for a mere administrative order formally approving as reasonable the constituent details of a new operative schedule proposed for future application to traffic already moving under an appropriately certificated operation.

Chapter 13700, Acts 1929, Laws of Florida, was passed by the Legislature in recognition of the circumstance that at that time the public highways of this state were in general use by established motor vehicle carriers and busses engaged in common carrier transportation of goods and passengers, and that the situation presented by that fact required regulation of the existing service in the public interest as well as the prohibition of new services except upon a showing of some public convenience and necessity therefor. It was accordingly provided in the original Act that all motor vehicle carriers engaged in *bona fide* operation of common carrier services on the highways on April 19, 1929, should as a matter of statutory right receive certificates of public convenience and necessity for a continuance of whatever operations in good faith were then being carried on.

In Smith v. Cahoon, 283 U. S. 553, 51 Sup. Ct. 582, 75 L. Ed. 1264, the criminal provisions of Chapter 13700, *supra,* insofar as they applied to private carriers were held by the United States Supreme Court to be too indefinite to be constitutionally enforced as criminal provisions, but otherwise Chapter 13700 remained in full force and effect and unimpaired as a law of Florida. It was so dealt with and applied in Florida Motor Lines v. Railroad Commissioners, 100 Fla.

538, 129 Sou. Rep. 876; In re: Harold R. Edwards Application, 100 Fla. 989, 130 Sou. Rep. 615; Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1027, 130 Sou. Rep. 587; Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1631, 131 Sou. Rep. 777; Florida Motor Lines v. Railroad Commissioners, 101 Fla. 1018, 132 Sou. Rep. 851.

Chapter 14764, Acts 1931, was a complete revision and re-enactment of the provisions of Chapter 13700, *supra*, which it superseded, but all rights .in force and all liabilities incurred under the earlier statute remained in effect under Chapter 14764, therefore certificates of public convenience and necessity outstanding under Chapter 13700 were not discontinued or impaired by Chapter 14764.

It was the intent and purpose of both Chapters 13700 and 14764 to recognize and continue in force all permissive *bona fide* operations that were being carried on in this state upon the highways thereof as of the statutory date of April 19, 1929, by granting certificates of public convenience and necessity as a matter of right therefor, but it was likewise contemplated both by the express terms of those Acts and by their necessary implication and intendments, that no change or modification by way of an enlargement, extension or alteration of the nature of any existing operation should be made to the prejudice of any of the existing transportation operators, or to the transportation system as a whole, except upon an affirmative finding by the Railroad Commission, after due notice and hearings, that public convenience and necessity required such enlargement, extension or alteration of the character of service.

Where an inquiry is required to be had on the question of public convenience and necessity with respect to either the institution of an entirely new service, or the material extenson, modification or alteration of an existing service in

such manner as to amount to the same thing, it must be affirmatively established by appropriate evidence and duly found by the commission therefrom, that the particular new service proposed to be brought into existence or made effective, is required in the interest of public convenience and necessity. Absent such affirmative finding bottomed on a sufficient factual showing to substantially support it, the Railroad Commission is without authority to grant its approval for the inauguration of a substantially new service, regardless of the form in which it is applied for, and orders so made by the commission under such circumstances are in violation of the essential requirements of law and should be quashed when relief therefrom is sought by affected parties in a proceeding by certiorari. Florida Motor Lines v. Railroad Commission, 101 Fla. 1018, *supra*.

Under our statute (Chapter 14764, *supra*) motor vehicle operative rights under certificates separately granted cannot be lawfully combined for the establishment of a through service without first obtaining from the Railroad Commission a certificate of public convenience and necessity. This rule is more than a rule of commission policy to be followed by the commission or not as it sees fit in its administration of the Act. It is inherent in the statute itself, because the Act plainly contemplates that no prejudicial alteration shall be made in the established operative relationships of existing certificated motor carriers one with another, whether sought under the same ownership or under separate ownerships, unless the change be duly justified upon an application for a certificate of public convenience and necessity applied for and granted in the statutory mode. See Coast Truck Lines v. Railroad Commission of California, 191 Cal. 257, 215 Pac. Rep. 898.

The purpose of issuing certificates of public convenience

and necessity is not for the advantage and benefit of the applicants requesting them, but is primarily for the public convenience and general welfare which are paramount to other problems. It is not the policy of such legislation as Chapter 14764, *supra,* to encourage destructive competition with existing transportation facilities and thereby decrease or destroy such existing services and deprive the general public thereof. The policy of the law is to avoid duplication of investments and maintenance and operating expenses and avoid inordinate commercial traffic on the highways that will tend to congestion and danger to traffic in general. Where a new carrier seeks to enter despite the fact that another is in the field, it is therefore generally held to be necessary for it to show that the existing service is not adequate to serve the public need. Western Suburban Transp. Co. v. Chicago & W. T. Ry. Co., 309 Ill. 87, 140 N. E. Rep. 56; Pond on Public Utilities (4th Ed.) Articles 775 to 781, *inclusive.*

But it does not follow as an invariable and inflexible rule that public convenience and necessity in the linking up of a through service out of two existing local services may not be affirmatively determined in any case without a showing of inadequacy of competing through services extant in the same territory.

Thus in a case like the one now before the court, the linking up of a water carrier service with a motor service may be for the public utility and benefit where the object is to afford a single service that can be used to the full extent of water access to water points so far as the same may be available with transportation beyond for other points, thereby enabling shippers to keep one transportation account with a single carrier where such carriers have consignees located in part upon water destinations and in part

on destinations not accessible to the water points except by complementary motor service from water destinations to points beyond.

Whether or not the order challenged in the present proceeding is capable of being supported on the foregoing theory of public convenience and necessity is not required to be decided on the present record, because the order last entered on December 18, 1934, and reaffirmed in the commission's opinion of January 3, 1935, is fatally defective for another reason and must therefore be quashed, even if the commission's approval of the St. Johns' River Company's new schedules is held to be the certification of a new service and is, notwithstanding that fact, found to be sustainable as the proper award of a certificate of convenience and necessity under the foregoing rule.

As we have already hereinbefore pointed out, the commission's action must be tested by its practical operation and effect on the heretofore established relationship of the St. Johns River Company's operations and the McLeod Lines' operations with each other considered in connection with the relation of the two in combination toward the motor and rail carrier system as a whole.

So tested in the present case, it conclusively appears that notwithstanding the view of the law and facts of this case as first expressed by the Railroad Commission in its first two orders to the effect that the St. Johns River Company's motor service and the McLeod Lines' Motor service were entirely separate operations, and should be so maintained until the commission upon a showing of public convenience and necessity should otherwise direct, the commission has now, by its order of December 18, 1934 (as affirmed in its opinion of January 3, 1935, which is in ratification of its order of December 18, 1934), awarded to the St. Johns

River Company not only what we construe to be a certificate of public convenience and necessity for an entirely new expedited through service made up out of a union of two heretofore existing local services operated formerly under separate and non connected certificates of public convenience and necessity, but has approved the inauguration of such new and expedited service with a condition incorporated in the order allowing it, to the effect that it may be performed by the St. Johns River Company, as a certificated motor carrier, at depressed water rates projected and extended *pari passu* to all points serviced by the new through service operation, henceforth to be executed by means of the combination of St. Johns River Company's water and truck carriage service, coupled with an expeditious traffic interchange schedule.

While the Railroad Commission in issuing certificates of public convenience and necessity is expressly permitted by Section 3 of Chapter 14754, Acts of 1931, to incorporate therein such terms, conditions, provisions and limitations as the commission shall deem proper in the public interest, or in the interest of transportation facilities already existing on the route or routes or in the territory to be served, the inclusion in a certificate of public convenience and necessity of a special provision permitting prejudicial rate advantages to be enjoyed by the favored carrier at the expense of other transportation facilities serving the same territory or area, is unauthorized by law and the order as a whole will be quashed in order that the Railroad Commission may reconsider and reframe its conclusions and order in such manner as will not be violative of the essential requirements of law as adjudicated in the certiorari proceeding. See Ulsch v. Mountain City Mill Co., 104 Fla. 418, 140 Sou. Rep. 218.

Section 1, par. (h), Chapter 14764, Acts 1931, defines an "Auto Transportation Company" as any person or corporation owning, leasing, using or exercising dominion over motor vehicles operated in common carriage of either persons or property for compensation over public highways over regular routes or on fixed schedules, or between fixed termini. The definition is applicable to, and includes, a water carrier which leases, uses or exercises dominion over motor vehicles operated in transportation of persons or property over public highways over regular routes, on fixed schedules between fixed termini. Chapter 14764 being an Act to regulate and supervise "auto transportation companies" as defined in that Act, therefore applies to any person, firm or corporation which, by doing the acts that in law constitute it an auto transportation company, has thereby elected to make itself an "auto transportation company" subject to the terms, conditions and privileges of the Act.

Therefore, when a water carrier seeks and obtains under Chapter 14764, *supra,* the privilege of operating a common carrier motor transportation service over the public highways to points neither on, nor immediately accessible to, water transportation facilities at through rates to consist of a combination of its water rates with the motor rates prescribed as applicable to that portion of its service performed over the highways, it becomes to all intents and purposes an "auto transportation company" as to that particular transportation it performs between such fixed termini as are not capable of being reached by its water carriage alone, and the commission in certificating and recognizing such water carrier as "an auto transportation company" under the statutes, is without lawful authority to approve the rendition of the combination water and motor transpor-

tation service between non water connected fixed termini, except on equal terms and conditions as to rates and the like applicable to all motor carriers carrying goods in common carriage between the same fixed termini and not performing any part of the transportation service by water or other means.

We hold therefore that while it was within the province and powers of the Railroad Commission to determine whether or not, as a matter of public convenience and necessity, the St. Johns River Company should have been permitted to adopt and observe the new schedules and interchanges proposed by it for application to its united traffic operation in co-ordination with that theretofore conducted from Orlando to Tampa by McLeod Lines Inc., as a local service, it was expressly made the duty of the commission by Section 3 of the Statute (Chapter 14764) to take into consideration the effect that the granting of its approval for a new and expedited combination water truck service at depressed rates as approved would have upon other transportation facilities within the additional territory sought to be served by said St. Johns River Company, and also upon transportation as a whole within said territory.

The last opinion and order of the commission affirmatively show that the commission, in granting its approval to the prayer of petitioner, St. Johns River Company, as evidenced by its said order of December 18, 1934, and its opinion of January 3, 1935, departed from the essential requirements of the law when it undertook to include, as a condition of its said order of approval, an express permission for departure by St. Johns River Company from established and applicable through auto transportation rates controlling exclusively auto transportation company termini sought to be serviced by the new arrangement, therefore

572

the order of the commission entered December 18, 1934, as ratified by the commission's opinion filed January 3, 1935, is quashed, but without prejudice to a reopening of the whole proceeding for further consideration and appropriate order not inconsistent with the principles of law enunciated in this opinion.

Order of Railroad Commission quashed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, concur.