O’CONNELL, Justice.
In its application, as twice amended, Southern Tours, Inc., referred to as Southern, sought authority to offer bus service over at least two of three proposed routes between the cities of St. Pe-tersburg and Pinellas Park, Florida. It also asked permission to conduct its operations, under several certificates previously issued to it by the Florida Railroad and Public Utilities Commission and those sought in this proceeding, as a unified system.
After public hearing the Commission entered the order under attack here in which Southern was granted the authority to operate a bus service in the common carriage of' passengers over two of the three proposed routes between St. Peters-burg and Pinellas Park.
As to the request of Southern to unify its operations the Commission stated in its order that:
“The Commission has given careful consideration to the applicant’s request to unify the operations under its various certificates and is of the opinion that this portion of the application should be granted upon the clearification of its present operating authority. Some of the routes under Southern Tours’ present authority are designated by outdated highway, numbers which need to be brought up to date before a new certificate can be issued. * * *»
The petitioners in this Court, Tamiami Trail Tours, Inc., referred to herein as Tamiami, and Clarence Wilkinson, d/b/a Pinellas Central Bus Line, referred to herein as Wilkinson, were protestants before the Commission.
Greyhound Corporation, Southern Greyhound Lines Division, also appeared as a protestant but withdrew its protest upon entry into the record of a stipulation between counsel for Southern and Greyhound in which Southern agreed that it would not “ * * * offer or sell direct transportation between St. Petersburg and Tampa and agrees that it is not seeking unifications of its operations east of Pinellas Park except direct service to Sunshine Park Racetrack at'Oldsmar and the Greyhound Racetrack at Derby Lane during seasonal operations.” Greyhound is therefore not one of the petitioners here.
To set the stage properly the operations of Southern, Tamiami and Wilkinson need to be explained as does the geography involved.
Prior to entry of the order here involved Southern held certificates authorizing it to operate sightseeing buses to points of interest within a ISO mile radius of Tampa; to transport racetrack patrons from both Tampa and St. Petersburg to Sunshine Park Racetrack; to operate common carrier bus service between St. Petersburg and the Gulf Beaches, north to Redington Beach and south to Pass-A-Grill Beach; and to operate common carrier bus service between Tampa and the Gulf Beaches.
This last mentioned service made it possible for applicant to take a passenger from Tampa to the Gulf Beaches, on one bus, and then, by transferring to another one of applicant’s buses, on into St. Petersburg. Thus, applicant was not operating a direct common carrier passenger service between Tampa and St. Petersburg. Protestants *315 Greyhound and Tamiami at that time did operate such a direct service between those two cities.
Under applicant’s existing authority to transport passengers from Tampa to the Gulf Beaches, it followed a route which caused its buses to go through Pinellas Park. The authority sought by it in these proceedings to operate between Pinellas Park and St. Petersburg would thus permit it to operate a second indirect service between Tampa and St. Petersburg.
Further, absent the stipulation above quoted, Southern, if the unification of its operations is granted, would be able to operate a direct bus passenger service between Tampa and St. Petersburg via Pinellas Park.
As above noted both Tamiami and Greyhound are interested in this proceeding because both operate direct bus service between Tampa and St. Petersburg.
Wilkinson, at the time of the Commission’s hearing and prior thereto, was authorized to operate a common carrier bus service between Pinellas Park and St. Petersburg. The route of Wilkinson’s service runs north and south between the two cities and is one of three routes over which .Southern sought authority to operate. It should be noted here that the Commission did not grant Southern authority to service this route. Rather, it gave it authority to service two parallel routes, one 25 blocks east and the other 15 blocks west of Wilkinson’s route. The latter route, however, did not run north and south, parallel to Wilkinson’s but ran in a northwesterly direction, thus approaching the northern extremity of Wilkinson’s route.
At one time prior to the hearing Wilkinson had been the recipient of a subsidy from the City of Pinellas Park, but when the subsidy arrangement expired he had not attempted to negotiate a renewal or extension of the agreement. Without such a subsidy Wilkinson operates at a considerable loss.
Pinellas Park lies north of St. Peters-burg, the boundaries of the two cities, as pertinent here, being twenty-two blocks or approximately two miles apart. However the main streets, or “downtown” areas of the two cities are some seventy-four blocks apart. The two cities are connected by several major streets which run north and south. The testimony indicates that the area -between the two cities is of urban character and is being rapidly developed and inhabited.
The petitioners, Tamiami and Wilkinson, urge first that the Commission erred in granting Southern permission to unify its operations under the various certificates held by it.
We agree with the Commission and Southern that this question is premature. A reading of the pertinent portion of the Commission’s order above quoted shows that Southern has not been granted permission to unify and no order has been entered authorizing it to do so. The Commission only expressed an opinion favorable to allowing unification. When an order is entered on the question the petitioners will then have the right to -review of that order by this Court. No such order is now before us.
Petitioners next contend that Southern failed to prove by competent substantial evidence that public convenience and necessity required the service proposed to be offered by Southern over the two additional routes between the two cities.
The scope of our appellate review of an order of the Commission is to determine whether the order accords with the essential requirements of law and is supported by competent substantial evidence. Coast Cities Coaches v. Florida Railroad & Public Utilities Comm., Fla.1962, 139 So. 2d 674, citing Greyhound Corp., etc. v. Carter, Fla.1960, 124 So.2d 9.
If these essentials are found to have been met the order must be approved. *316 If there is competent substantial evidence in the record which is sufficient to support the order it matters not that there is also in the record evidence which would have supported a contrary order.
Our review of the record reflects that there is in the record competent substantial evidence to support the granting to Southern of the authority to operate bus service between the two cities on the two additional routes.
A summary of the evidence on this point is unnecessary. There was evidence both as to need of the proposed service and lack of need. Likewise there was evidence as to the sufficiency and insufficiency of the existing service offered by Wilkinson.
We think it worthy of mention, however, that the two routes granted Southern are respectively 25 and 15 blocks east and west of the route served by Wilkinson; tire routes 'are comparatively short; and the area served is urban in character. The new service, as is that offered by Wilkinson, is therefore more intra-city than intercity, while it is also inter-city.
In many instances the distances which passengers would have to travel to reach the existing route and service offered by Wilkinson could well be about the same as that required to be traveled in reaching a destination in either city.
It is therefore not difficult to understand that the new routes to be covered by Southern are necessary to serve the public convenience.
The Commission in its order expressly found that public convenience and necessity demanded the additional service to be offered by Southern. This finding was based on competent substantial evidence. We will not disturb it.
Petitioners last contend that the Commission failed to observe the mandate of Sec. 323.03(3), F.S.A., which requires that, in granting a certificate of public convenience and necessity, the Commission! shall:
“ * * * take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory.”
The order under review gives no specific indication that the Commission did give consideration to the effect of the order on existing transportation facilities in the area. Yet we cannot here say that it did not do so.
Orders of the Commission come to this. Court with a statutory presumption of validity. Sec. 350.12(2) (m), F.S.A.; Florida Rate Conference v. Florida Railroad & Public Utilities Comm., Fla.1959, 108 So.2d 601. See also Sec. 364.20, F.S.A.; General Telephone Co. of Florida v. Carter, Fla. 1959, 115 So.2d 554.
On review this presumption can be overcome only where the invalidity of the decision plainly appears on the face of the-subject order, or is made to appear by clear- and satisfactory evidence.
The invalidity of the decision here involved is not apparent on its face nor is it shown by clear and satisfactory evidence-that it is invalid.
The record clearly reveals that the effect on Wilkinson of the granting of the new authority to Southern was presented to-the Commission at the hearing in this cause.
It was shown that when Wilkinson began operations on his present route, several months before the hearing in this cause held on October 12, 1961, he did not feel it would operate on a “break-even basis” so he arranged for a subsidy agreement from the City of Pinellas Park under which the City guaranteed him revenue of $104.50 per day. Under this subsidized operation Wilkinson realized an operating profit of only $747.37 for the first six months of’ *317 1961. This subsidy arrangement expired in August 1961 and for some unexplained reason Wilkinson, although invited to do so, made no attempt to continue or renew the agreement. In the first month after the expiration of the subsidy he lost $941.87 on his operation.
He further testified that if there was any diversion of traffic or revenue from his operation his losses would increase and he would be forced out of business.
The fact that the effect on existing transportation facilities was placed squarely before the Commission supports the presumption that the Commission did consider this factor as required by the statute.
Since it can be argued that the granting of the authority to Southern is likely to adversely affect the financial success of Wilkinson’s operation it can therefore be argued that the Commission did not give proper consideration to this factor.
However, it must be noted that Sec. 323.03(3), F.S.A., does not make the effect on existing transportation facilities determinative of the issuance of a new certificate, the statute only requires that it be one of the standards which the Commission shall consider.
Therefore, the mere fact that an existing operation is not successful, and may be rendered even less successful by issuance of a new and somewhat competing certificate, does not in itself preclude the issuance of such new certificate, if the Commission finds on proper evidence that in spite of this possible harmful effect on existing facilities the public convenience and necessity demands issuance of the new authority.
In this case the Commission could properly have decided that the benefit to the public convenience of the two new routes granted Southern would outweigh any possible harmful effect on Wilkinson’s operations. It could also have determined, in its judgment, that the effect on Wilkinson’s operation would be insignificant because of the distances between the two new routes and the existing one.
It is unfortunate that the Commission made no reference in its order to the consideration of the effect of the new certificate on existing facilities. The order is summary and makes only one finding of fact' — the ultimate fact that public convenience and necessity demanded issuance of the new certificate for the two additional routes.
There is no statutory requirement that an order of the Commission set out findings of fact necessary to a decision of the issues before it as is required in proceedings under the Workmen’s Compensation Act by Sec. 440.25(3) (c) F.S.A.
Nevertheless, the recitation of such findings in orders issued by the Commission would not only make review thereof much easier and more certain but would also, no doubt, reassure the interested parties that the Commission had given consideration to all matters required by the statutes.
We have urged this before.
In Central Truck Lines, Inc. v. Railroad Commission, 1935, 118 Fla. 555, 160 So. 26, 30, we said the Commission’s order should be based upon public convenience and necessity which has been “affirmatively established by appropriate evidence, and duly found by the commission.”
On occasion the Commission’s order is so worded as to be of assistance to this Court in reviewing the order. For instance, in Greyhound Corp., etc. v. Carter, Fla., 124 So.2d 9, 14, supra, the Commission in its order specifically found that the protestant had provided adequate service over one route but over the subject route its service had been far less adequate, and the testimony showed a definite need for service for that area, which service the Commission allowed a competing applicant to provide. See also Atlantic Coast Line R. Co. v. Railroad Comm., 1942, 149 Fla. 245, 5 So.2d 708, 712, where the Commission specifically *318 stated in its order that the effect of its order upon other carriers in the area would be "negligible” compared to the benefits to be derived from the newly authorized service; Great Southern Trucking Co. v. Mack, Fla.1951, 54 So.2d 153, 156, where in its order the Commission stated the protestant had not furnished adequate service to the public.
This Court, in Central Truck Lines v. Railroad Comm., 118 Fla. 555, 160 So. 26, supra, felt that from the very order of the Commission it was affirmatively shown the Commission had not taken into consideration the effect the new operation would have upon existing transportation facilities within the affected area.
In Florida Motor Lines v. State Railroad Comm., 1931, 101 Fla. 1018, 132 So. 851, 861, however, this Court noted that the order of the Commission did not state the Commission had complied with the statute by considering the effect which the granting of the certificate would have upon other transportation facilities within the territory, but stated that that alone “does not necessarily render the order invalid, if the findings and order are duly supported.” In that case the Court went on to observe the record supported a conclusion the new service would injuriously affect the business of other transportation lines in the territory. The Court concluded that it could not be said on the record in the case that the findings of the Commission were clearly wrong, or that the effect of the order upon other transportation facilities would be different from or more injurious than may be permitted under the statute.
Perhaps that opinion should be governing in this case. On the other hand, authority does exist for a holding that it cannot be concluded or surmised that such a commission found the facts necessary to support its decision in the absence of a specific finding. Wabash Valley Coach Co. v. Arrow Coach Lines, 1950, 228 Ind. 609, 94 N.E.2d 753. And in McRae v. Robbins, 1942, 151 Fla. 109, 9 So.2d 284, 290, where this Court was concerned with the authority of the Barbers’ Sanitary Commission, in a concurring opinion, Justice Whitfield stated:
“The commission has only the delegated administrative authority conferred by the particular statute; and the order made by the commission should be predicated upon evidence and facts found to show compliance with the statute under which the delegated authority is exercised. The order made should contain statements of ultimate facts found showing that the statutory authority was followed and that the order made by the administrative commission has adequate support in evidence duly adduced and considered with findings thereon warranting the order. * * * ” (emphasis supplied)
This authority appears more to the effect that such conclusions and presumptions are not to be made in the absence of the essential statement by the Commission in its order of findings of ultimate fact. In the instant case the statute does not clearly require the Commission to deternüne and affirmatively set out as a fact what effect the granted certificate will have upon existing transportation facilities. And in the order under review the commission did set out the ultimate fact that public convenience and necessity demanded the granting of the proposed authority.
We cannot say that the evidence clearly establishes that the Commission did not comply with its statutory obligation; the presumption still prevails that it did.
Our conclusion, in view of the statutory presumption and the corroboration found in the record, is that the Commission has not been shown to have entered an order which was not in compliance with the essential requirements of the law, insofar as it pertains to the grant of authority to the applicant to operate over the two routes between St. Petersburg and Pinellas Park.
*319 As previously noted, we do not herein rule upon the question of unification of applicant’s operations, having found the question to be premature.
Accordingly, the petition for writ of cer-tiorari is hereby denied.
ROBERTS, C. J., and TERRELL, THOMAS and THORNAL, JJ., concur.