### Application of RAPID DELIVERY SERVICE, Inc.
6944-CCT.

Florida Public Service Commission.

May 26, 1965.

Alan B. Brody, Miami, for the applicant.

Frank J. Kelly, Kelly, Paige, Black & Black, Miami, for Pony Express, Sands Delivery Service and Red Arrow, protestants.

Wayne K. Ramsay, Jacksonville, for the Greyhound Corporation, Southern Greyhound Lines Division, protestant.

J. E. Allen, Jacksonville, for Ryder Truck Lines, Inc., protestant.

George T. Edison, Jr., Orlando, for Martin Anderson, d/b/a Sentinel Star Express, protestant.

Robert C. Boozer, Atlanta, Ga., for Railway Express Agency, Inc., protestant.

James E. Wharton, Coles, Himes & Talley, Tampa, for Central Truck Lines, Inc. and Tamiami Trail Tours, Inc., protestants.

John T. Bond and John P. Bond, Miami, for Ace Delivery Service, Inc., protestant.

Joe Saltis, Tampa, for Coastal Parcel Delivery Service, protestant.

T. Rankin Terry, President, Terry Transportation, Inc., Fort Myers, for Terry Transportation, Inc., protestant.

Terrence Ewing, President, Ewing's West Coast Delivery Service, Inc., Sarasota, protestant.

Chairman EDWIN L. MASON, Commissioners JERRY W. CARTER and WILLIAM T. MAYO each participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, William L. Weeks, held public hearings on this application on June 4, 5, 6 and 7, 1963, and September 10, 11, 12 and 13, 1963, at the State Office Building, Miami.

The examiner's report and recommended order were duly served on all of the parties. Exceptions to the recommended order were filed with the commission. The entire record herein, including the application, the testimony adduced at the public hearings, the exceptions to the recommended order, the supporting memoranda, and the oral argument held before the full commission, have all been examined by the full commission. After due consideration, the commission enters its own order in this cause.

By this application, Rapid Delivery Service, Inc. seeks an extension of its certificate of public convenience and necessity no. 418 so as to authorize the transportation of freight consisting of packaged and unpackaged general merchandise limited to parcels weighing not more than 75 pounds and to shipments weighing not more than 75 pounds, moving from one shipper to one consignee on the same vehicle on the same day, to, from, and between all points and places in Dade, Monroe, Broward, Collier, Palm Beach, Hendry, Lee, Charlotte, Glades, Martin, St. Lucie, Okeechobee, Highlands, DeSoto, Hardee, Sarasota, Manatee, Pinellas, Hillsborough, Polk, Osceola, Indian River, Brevard, Orange, Seminole, Lake, Sumter, Pasco, Hernando, Citrus, Marion, Volusia, Flagler, Putnam, Alachua, Bradford, Clay, St. Johns, Duval, and Nassau counties; except that applicant proposes that this authority be restricted against the transportation of parcels in intracounty shipments within Dade County during the effective life of the interchange system implemented by commission orders nos. 4428 and 4428-A.

During the course of the hearing, counsel for the applicant moved to amend the application so as to restrict the authority sought thereunder against the transportation of parcel shipments both originating and terminating within Hillsborough, Pinellas, and Polk counties. This restriction was not intended to apply upon shipments originating within any of said counties and destined to points and places covered by this application outside of these counties or to shipments originating outside those counties and destined to places within those three counties. There being no objections, the motion was granted and the amendment permitted.

Prior to the hearing, it was decided by this commission in order no. 5786 that the territory of Monroe County should be dismissed and stricken from the application. At the time of filing his application, applicant requested that public hearings be held at Miami, Orlando, Tampa, and Jacksonville. The commission ruled that hearings would not be held at any point except Miami. It was also decided by the commission that the hearing would be adjourned at the close of applicant's case and that a separate hearing would be held at which time the case of the protestants would be presented. At the close of the first hearing, applicant petitioned the commission for leave to take the deposition of public witnesses at Orlando, Tampa, and Jacksonville. This motion was denied by a majority vote of the commission.

George Sheridan, president of applicant corporation, appeared as a policy witness. He generally testified as to his background and experience in the parcel delivery business and as to his present operations and how he proposed to operate in the event that this application were granted. Applicant presently holds authority from this commission by virtue of the aforesaid certificate no. 418 to transport commodities of the same description governed by this application within Dade, Broward and Palm Beach counties, subject to the restrictions heretofore imposed upon that certificate against the transportation of intracounty shipments within Dade County. By this application he is seeking authority to extend his present operations throughout the entire area covered by this application, which may for simplicity be characterized as peninsular Florida (excluding the "Panhandle").

Applicant's present service may best be described as a parcel delivery service operating on an "overnight" basis which transports packaged and unpackaged general merchandise, not to exceed shipments of 75 pounds. This service is over irregular routes and on irregular schedules and serves off-route points. Under his present service, applicant will make deliveries inside the consignee's place of business and will handle all commodities regardless of size up to lengths of approximately 18 feet. In addition, applicant offers specialized and personalized service in connection with the handling of shipments, and he further transports shipments which may be crated, packaged, or unwrapped, including garments on hangers. An essential feature of applicant's operation is the provision of both pickup and delivery services on all such shipments at all points.

In the event this application is granted, applicant proposes to offer a service incorporating the same features and qualities throughout the entire area covered by the application. It is apparent from the record that this applicant has the experience and financial ability to do so; and the detailed plan of proposed

operation to which applicant testified was found by the hearing examiner to be a feasible one. No exceptions were made to this finding.

In support of this application applicant produced the testimony of a large number of public witnesses. Since the testimony of these witnesses was so voluminous, it was decided to allow certain witnesses to adopt the testimony of others. Altogether there were 38 shippers who appeared in support of the granting of this application. These witnesses represent a very significant segment of the shipping public which requires a transportation service for parcels similar to that which applicant proposes to render, throughout the entire territory covered by this application. The bulk of these witnesses, having businesses located in the Dade-Broward-Palm Beach area, were concerned mainly with shipments between said area and all points and places throughout the rest of the state covered by this application. Mr. Joel Kaplan testified that Burdine's Inc., a large department store, needs service on shipments to Fort Myers, Clewiston, Fort Pierce, Vero Beach, Orlando, Cocoa, Melbourne, Titusville, Daytona Beach and generally "anywhere there is a customer we can ship to."

Mr. Myron C. Freeman testified that L. A. Mosher Co., which deals in veterinary supplies, needs service on shipments to Vero Beach, Fort Pierce, Cocoa, Melbourne, Merritt Island, Eau Gallie, Daytona Beach, New Smyrna Beach, St. Augustine, DeLand, Gainesville, Ocala, Sanford, Orlando, Bartow, Lakeland, Tampa, Plant City, St. Petersburg, Clearwater, Bradenton, Sarasota, Venice, Fort Myers, Arcadia, Clewiston, Kissimmee, Okeechobee, and other smaller towns.

Mrs. Vern Zeitler testified that American Paper and Linen Corp., a distributor of paper products and supplies, needs service on shipments to Jacksonville, Tampa, St. Petersburg, Ocala, Orlando, Cocoa Beach, Winter Haven, Winter Garden, Lakeland, Lake Wales, as well as smaller towns generally all over the state.

Mr. Fred Oggenfuss testified that Southern Tackle Co., a distributor for fishing tackle, equipment and supplies, needs service all the way up the east coast to Jacksonville and on the west coast to St. Petersburg and the territory around Lake Okeechobee.

Mr. Howard Richardson testified that Plastikool Corp., the manufacturers of plastic and fiberglass products, needs service on shipments throughout the entire state and to just about every point within the territory in which the applicant is seeking authority.

Mr. Donald A. Bliss testified that Air Control Products, a large manufacturer of building materials, needs service on shipments

to Vero Beach, Eau Gallie, Daytona Beach, Jacksonville, DeLand, Orlando, Ocala, Lakeland, Tampa, St. Petersburg, Sarasota and Fort Myers.

Mr. Harry Bressman testified that Cambridge Furniture Mfg., Inc., manufacturers of chairs and tables, needs service on shipments to almost every major city in Florida from Key West all the way up to Jacksonville, and on the west coast of Florida from Naples all the way up to Tarpon Springs, and to Orlando and Ocala.

Mr. Sheldon Hakes testified that Jackson Camera Co., a distributor of photographic equipment and supplies with branches in Miami and Orlando, needs service on shipments all over the state. The bulk of this traffic, however, moves along the east coast of Florida as far as Cape Kennedy and along the west coast from Naples to Clearwater.

Mr. Robert S. Hamburg testified that Paint and Supplies, Inc., a distributor of paints and hardware, needs service all along the east coast of Florida to Jacksonville and to Gainesville, Ocala, Tampa, Orlando, St. Petersburg, Winter Park, Fort Myers and Sarasota, and to small cities throughout the entire area "wherever a hardware store could be, and they could be at every highway and by-way in the area."

Mr. James A. Van Horn testified that American Photocopy Equipment Co., manufacturers of photocopy equipment and supplies, needs service on shipments to doctors, lawyers, accountants, people with little businesses in their homes, and large concerns in Tampa, St. Petersburg, Orlando, Sanford, Leesburg, Arcadia, Vero Beach, Fort Pierce, all along the east coast, Fort Myers, Winter Garden, Winter Park, Ocala, Jacksonville, and many more places, or just about every point within the territory covered by this application, including small towns and outlying points.

Mr. Jack Clark testified that Margaret Mansfield, a manufacturer of draperies, needs service on shipments as far as Jacksonville, Orlando, and Tampa, as well as points inbetween.

Mr. Bernie Weintraub testified that M & M Electrical Supplies, a distributor of electrical supplies and hardware, needs service on shipments to Fort Pierce, Fort Dade, Vero Beach, Daytona Beach, Jacksonville, the territory around Lake Okeechobee, and over to Orlando and Tampa, as well as to numerous small cities and other intermediate points.

Mr. Douglas Fein testified that Edwards Fabrics, a distributor of cloth and fabrics, needs service on shipments to such representative points as Jacksonville, Jacksonville Beach, Starke, Alachua,

Ft. Walton Beach, Gainesville, Pass-A-Grille, Winter Garden, Winter Haven, Clearwater, Tampa, Punta Gorda, Sebring, Bartow, Vero Beach, Fort Pierce, Melbourne, and Indialantic. He further testified that actually his shipments cover just about the entire state.

Mr. Hyman Weiner testified that Alchar Hardware Co., a distributor of hardware, used to serve a smattering of accounts throughout the state but discontinued this because of transportation difficulties. He still has shipments to Bradenton, Fort Myers, Sarasota, St. Petersburg, Titusville, Cocoa, Jacksonville, and Orlando, which are delivered by his own salesmen. He also receives shipments from Jacksonville.

Mr. Lloyd McGuire testified that Pittman Moore Co., a distributor of biologics and pharmaceuticals, needs service on shipments to Orlando, St. Petersburg, Tampa, Jacksonville, Okeechobee, and all intermediate points as well as to small towns, places outside city limits and outlying points. He stated that this would cover the entire state of Florida, except for the "Panhandle" area.

Mr. Martin Oster (whose testimony was adopted by seventeen other witnesses) testified that Firestone Sales Co. needs service on shipments to every single point within the territory in which the applicant is seeking authority. He elaborated by saying— "You name it, we send there." This would include all large and small cities and outlying areas and suburban areas.

In the aggregate, these witnesses ship commodities and items of virtually every conceivable type and description in parcels weighing up to 75 pounds. Included among the many items handled by the shippers were general merchandise such as would be sold by department stores, veterinary supplies, pet supplies, pharmaceuticals, biologicals, paper goods, washroom supplies, fishing and sporting equipment and supplies, plastic sheets, awnings, patio covers, windows, bath enclosures, kitchen cabinets, chairs, tables, cameras, photographic equipment, film, chemicals, hardware paints, solvents, insecticides, aerosol materials, gasses in cylinders, photocopy machines, and supplies, paper, stationery, office supplies, draperies, fabrics, electrical equipment and supplies, light fixtures, tools and garden supplies, hospital supplies, notions and sundries, toilet preparations, cosmetics, wearing apparel, marine supplies and equipment, machinery and parts, rubber products and hoses, phonographs, tape recorders, television sets, radios, business forms, bank supplies, laboratory supplies, phonograph records, gifts, housewares, nuts, popcorn, theater supplies, hats, dresses, and numerous additional articles.

In addition to those witnesses having places of business in the Miami-Fort Lauderdale-Palm Beach area, several witnesses testi-

fied that their companies had branches located throughout the state. In all instances, they stated that the problems encountered at those branches were similar to those experienced in the local area.

Mr. Clifton Eugene Garrett appeared as a representative of Associated Stationery and Supply Co. This company is a distributor of stationery and office supplies and maintains four warehouses located at Miami, Orlando, Jacksonville and Tampa. From his Miami branch he needs service on shipments to the area from Key West to Vero Beach; from Orlando he covers from Vero Beach to Daytona Beach, west to Lakeland and north to Gainesville; from Jacksonville, the area covered goes from Daytona Beach north to the state line and west as far as Pensacola; and from Tampa he needs service on shipments within the area from Fort Myers north to Citrus County. He further testified that within each of these areas his company ships to every city which has a stationery store as well as to rural areas and off-route points.

The testimony of the witness Garrett was adopted by three other witnesses who differed from the witnesses adopting the testimony of the witness Oster in that they represented companies having more than one branch or warehouse within the state of Florida. These companies were Amazon Hose and Rubber Co., a distributor of rubber products with branches in Miami and Tampa; Brooks Distributors, wholesale distributors of records, phonographs and small appliances, with branches in Miami, Jacksonville and Tampa; and Keely, Gardener and Swasy, dealers in marine hardware and paints, with warehouses in Miami and St. Petersburg.

Appearing as protestants and in opposition to the granting of this application were the Greyhound Corporation, Southern Greyhound Lines Division, Ryder Truck Lines, Inc., Central Truck Lines, Inc., Martin Anderson, d/b/a Sentinel Star Express, Railway Express Agency, Inc., Tamiami Trail Tours (bus and truck divisions), Ace Delivery Service, Terry Transport, Inc., Ewing's West Coast Delivery Service, Inc., Pony Express, Inc., and two local Dade County parcel delivery services.

The overall testimony of the supporting public witnesses reveals a number of shipping problems which are presently experienced through the use of the existing services provided by the protesting carriers. There were a number of specific complaints about the existing services. These included general dissatisfaction, failure to make pickups, delays in making pickups, delays in delivery time, abuse of customers, unreliability, inability to

obtain information regarding shipments handled, difficulties in obtaining pickup and delivery service, slow service, lack of service in small towns, failure to give service promised, irregularity of service, refusal to handle certain shipments, and general inconvenience.

From the examination of the entire record it is apparent that these public witnesses' chief problems lie in the general overall inadequacy of the existing transportation facilities and service. Such inadequacy lies not just in the failure of protestants to furnish the service required, but in the inability of the protestants to do so, as well. From the testimony of the supporting witnesses, we may see that there is a need for transportation service which would solve all or most of the problems which are inherent in shipments of small parcels. These problems are presently being solved by the applicant in the limited area he now covers. The public witnesses universally testified that it is the same service which applicant presently renders which they need in the entire area covered by this application.

The broad general problems which face these shippers may be summarized as follows—

1. Need for a transportation service which will provide both pickups and deliveries on all shipments.

2. Need for a transportation service which will provide overnight deliveries to all points throughout the area covered by the application.

3. Need for a carrier which will give adequate service to off-line points, and outside of municipal areas.

4. Need for a carrier which will provide specialized and personalized service for the accommodation of customers.

5. Need for a carrier which will make "inside" as opposed to "store-door" deliveries.

6. Need for a carrier who will transport commodities which are of an inflammable, dangerous or perishable nature.

7. Need for a carrier which can provide service on shipments of unusual size or shape.

8. Need for a service which will transport garments on hangers.

9. Need for a carrier which will transport shipments which may be either packaged or unpackaged, crated or uncrated.

Such needs (except those relating to the transportation of garments on hangers) are universally applicable to all shippers who testified in support of this application. They cannot be met by existing transportation facilities under their present operations due to tariff restrictions and requirements, present operating policies, limitations of authority, inability to adapt to the peculiar requirements of such small shipments, lack of facilities and equipment to handle unusual shipments, and limitations inherent in a service which moves over regular routes and schedules. As a result, the service of every single protesting carrier is inadequate in one or more of the foregoing requirements.

Where a carrier may be adequate in one respect, he is deficient in another. For example, common carriers such as Central, Ryder and Tamiami do provide pickup and delivery service; but, in most cases, their services are insufficient because of their packing requirements, failure to serve off-points, failure to make "inside" deliveries, failure to provide specialized services, and, most important, failure to give reliable overnight service throughout the entire area covered by this application. Similarly, we may see that the bus companies which do give overnight service are inadequate in numerous other particulars, such as the failure to provide pickup and delivery service throughout the entire area covered by the application, failure to serve off-line points, failure to provide specialized and personalized service, failure to make "inside" deliveries, failure to transport commodities which are inflammable, dangerous or perishable, inability to transport shipments of unusual size or shape, failure to transport garments on hangers, inability to give delivery service outside of municipal areas, and inability to make deliveries at points other than where they maintain agencies in the case where a signed delivery receipt is required. There are, of course, other parcel carriers who appeared as protestants, and in theory, their operations are similar to the proposed operations of applicant. The main problem with these carriers, however, is the fact that they do not serve the major portion of the territory under consideration. There are, in addition, other differences which were testified to. Because of self-imposed tariff restrictions, even these carriers are not prepared to offer service on large items, inflammable or dangerous items, or shipments where the pickup or delivery would be to a place which is more than fifteen feet from the tailgate of the vehicle.

The most significant thing, however, is that on the majority of parcel shipments there are more than one of these peculiar requirements applicable to the same shipment. This would make it physically impossible for any single carrier (other than a specialized parcel carrier) to adequately meet all the needs of the shipper

in connection with that shipment. It is not enough that one carrier, for example, might give pickup and delivery service, but require that shipments be crated, while another which did handle uncrated shipments fails to give pickup and delivery service. Neither could successfully transport a shipment which had need of both features. The various possible combinations of the aforesaid peculiar requirements which might apply to any given parcel shipment is so great that it becomes readily apparent why the Supreme Court of Florida, and this commission in numerous earlier decisions, have chosen to regard the parcel delivery business in a class by itself.

In the case of Ace Delivery Service v. Boyd, 111 So. 2d 448 (1959), it was recognized (by this commission and affirmed by the Supreme Court) that a number of partial services could not meet a shipper's need for a single "transportation service rendered by an experienced, well-trained organization that could handle every phase of the delivery demands" imposed upon that shipper by the public. In effect, the court held that only a highly specialized and personalized type of delivery service can meet the needs of certain shippers. This is particularly true when a carrier such as applicant proposes to furnish a service which includes personalized service not obtainable from any other carrier. Moreover, this commission in its orders nos. 4428 and 4428-A has accorded parcel carriers special regulatory treatment as a class—a distinction which could be validly made only where the inherent nature of a transportation service were such as to set it apart from all other types of carriers.

This commission has gone on record in docket no. 5807-CCT, order no. 5541 (application of Pony Express) wherein we recognized and specifically held that the service of a parcel carrier differs from bus express and railway express. Among all the protestants it is only the latter types of express services which are primarily concerned with the transportation of small packages.

The commission recognizes, however, that the protestants include a number of localized parcel carriers, and while we do not seek to covey the impression that there are any major differences between their services and the services of applicant, these parcel carriers are extremely limited in the territories which they may presently serve, and individually or collectively fall far short of being able to provide a service of the scope covered by this application. Because of the territorial limitations, none of them is in any position to meet all or a substantial part of the needs of the shippers who testified in support of this application. For the same reasons, as hereinbefore expressed—that two carriers in conjunction cannot furnish the same services that a single carrier

can—it would be apparent that a number of local parcel carriers, even if they covered the entire area within the scope of this application, could not perform the same function of a single statewide carrier without sacrificing some part of the service which the shipping public requires. In fact, the record shows that some of the dissatisfaction of the shippers rests upon the necessity of using more than one carrier and the irregularity of service resulting from the use of different carriers.

Aside from the general inadequancies of the available services, the record reveals a number of specific complaints with the existing carrier services. These complaints were directed to the services of just about every one of the protesting carriers. Including the testimony of witnesses who adopted the testimony of other witnesses, there were well over one hundred such specific complaints.

It is apparent, therefore, that a very real and urgent need exists among public shippers at the present time, and that this special need can be met only through the implementation of a specialized parcel delivery service such as applicant proposes. It is equally obvious that if applicant is to effectively operate in the manner he proposes, he must be authorized to give full service over the entire area covered by this application. If limitations were imposed upon this authority, the commission must also consider what effect, if any, they will have upon the proposed operations and, ultimately, upon the ability of applicant to serve the overall public need.

It is recognized that there are certain aspects of applicant's case which have not been established with the same persuasive force and effect as others. The bulk of applicant's proof concerned itself with the need for service on shipments between the Dade-Broward-Palm Beach area, on the one hand, and points and places outside those counties, on the other. There is abundant evidence in this regard. Even regarding these shipments, however, it appears that the greater testimony was presented regarding outbound, as opposed to inbound, shipments. The mere fact, however, that equal testimony was not presented on both phases does not of itself warrant the imposition of restrictions. The problems of the shippers would be the same in both directions. Only the respective volume of traffic moving in each direction might differ. If the existing transportation facilities were generally inadequate to meet the needs of the shippers, it would make very little difference in which direction the traffic was moving. On the other hand, however, any attempt to restrict this authority to outbound shipments would destroy the pattern of operations upon which applicant's service will be based, so that the shipping public will suffer in the final analysis.

From a quantitative point of view, we must observe that considerably less testimony was presented as to the need for service on shipments originating in other areas of the state. Such testimony was limited to five witnesses who represented companies having branches in one or more of these locations as well as in Miami. The transportation problems relating to those branches were essentially the same as for the Miami branch.

However, this commission does recognize the handicap imposed upon the applicant in the presentation of his case in our earlier decision to restrict public hearings to Miami only instead of at Jacksonville, Orlando and Tampa as well, as originally requested. A motion for leave to take the depositions of public witnesses at those locations was opposed by the protestants and was denied. It is to this that we attribute the fact that the bulk of applicant's witnesses were from the Miami area, rather than to the non-existence of such witnesses from other areas. Although applicant had the opportunity to bring such witnesses to the Miami hearing, we cannot entirely overlook the expense and inconvenience to the public which would have resulted. However, this commission takes judicial notice of the fact that there are merchants and shippers located throughout the state of Florida whose businesses are similar to the merchants and shippers in the Miami area, such as those who testified in support of this application. Where a need for service exits by virtue of the inability of existing carriers to furnish the exact type of service which the public needs, then we may infer that the problems of such other shippers and their transportation requirements would be essentially the same, no matter where they were located. In this regard we must again note the distinction between the mere *failure* to render the required service and *inability* of the protestants to provide such services under their present operations. If the protestants had merely *failed* to serve shippers in the Miami area (or had done so in an unsatisfactory manner) this might not necessarily warrant a conclusion they had similarly failed to serve shippers in other areas — but where the protestants, under their present operation were *unable* to meet the needs of shippers in the Miami area, it must follow that they would be similarly unable to meet the needs of the same type of shippers in other areas.

These inferences and conclusions do not stand alone, but rather augment the limited testimony which was produced. These general assumptions are consistent with the experience drawn upon by this commission in considering the many, many cases heretofore decided by us. We conclude that applicant has produced competent, substantial evidence sustaining the burden imposed upon him by law as to the granting of the application in its entirety.

In opposition to this application the protestants presented a number of company witnesses and public witnesses. Generally they maintained that the granting of this application would adversely affect them contrary to the requirements of section 323.03 F.S.A.

The protestants, Central Truck Lines, Inc., Ryder Truck Lines, Inc., and Tamiami Trail Tours, Inc. (truck division) are all common carriers of freight over regular routes and on regular schedules serving much of the territory covered by this application. These carriers specialize in large shipments. Their inability to meet the needs of shippers comes primarily from their requirements that the shipments they handle must be crated. Their operations are limited to pickups and deliveries within a specific distance from the highway routes they travel. They sometimes offer inside deliveries, by special arrangements, but give no specialized handling service. The main criticism leveled against these carriers, however, is the complaint of many witnesses that they cannot get reliable overnight service from them.

The protestants, Southern Greyhound Lines Division of the Greyhound Corporation and Tamiami Trail Tours (bus division) are mainly bus lines transporting passengers. Their operations do, however, include the handling of bus package express. These carriers cannot meet most of the public needs primarily because they offer limited pickup and delivery services (and only in those areas where they have arrangements with local parcel carriers). One of them testified that over 98% of its traffic moves on the basis whereby a shipper must bring his package to the bus terminal and the consumer must pick it up at the destination terminal. They will not handle a number of items due to exclusions in their tariffs; nor can they handle large or bulky items. They further maintain certain packing requirements on the shipments which they handle and do not serve off-route points.

Railway Express Agency, Inc. is an express company generally serving the territory covered by this application. In addition to shipments moving on the ground by rail and truck, this company also furnishes air express service to a number of cities. This carrier stated that it holds out to the public overnight service, although admitting that in some instances it does not actually give such service. Pickup and delivery service is available, but Railway Express does not undertake to provide such service to all points. Usually these services are restricted to corporate limits of the cities served. In other cases the customer would have to pick up or deliver his own shipment to the company agency. It does not serve some of the points covered by this application, and in several places its offices are open only on a seasonable basis. Specific packing requirements for shipments are

governed by the company's tariff and the restrictions therein contained.

Sentinel Star Express is a carrier operating out of the Orlando area. Unlike applicant or the other parcel carriers who testified, this protestant operates over regular schedules and routes. Its service is keyed to the delivery of newspapers, and covers only a small segment of the territory under consideration. Within that territory it operates in conjunction with agents which handle the pickups and deliveries outside of Orlando. This protestant's own trucks are confined to designated highways. It does not offer specialized handling features such as are proposed by applicant and is restricted by its tariff as to making inside deliveries. This tariff also contains other restrictions against the handling of dangerous or inflammable commodities. In addition, this carrier maintains certain packaging requirements and will not transport garments on hangers.

Ace Delivery Service, Inc. is a carrier which transports wear-apparel and garments on hangers. It holds authority to serve the area presently served by applicant, and, as to garments on hangers, serves Polk, Manatee, Hillsborough, Sarasota, Orange and Pinellas counties. It does not presently give service to any of the other territories covered by this application, although called upon by shippers to serve such places.

The remaining protestants were the local parcel carriers hereinbefore mentioned. In some respects their services differ from those of the applicant, but their chief inadequacy, as stated earlier, comes from the limited territory to which they can give service.

All the public witnesses who testified in opposition to the granting of this application appeared on behalf of the protestant Tamiami Trail Tours, Inc. Their general testimony was to the effect that they are satisfied with the bus package express service they presently receive from Tamiami and do not need the services of the applicant. They further testified that even if this application were granted, they would continue to use the services of the bus line primarily because they would not need pickup and delivery service.

All the protestants contend that the granting of this application would adversely affect their business and subject them to potential losses which they may sustain. For the most part, this position cannot be said to be much more than speculation. It has not been made to appear in any concrete fashion that the granting of this application will have any appreciable adverse effect upon transportation facilities within the territory sought to be served by applicant, or upon transportation as a whole within said terri-

tory. It would appear that the transportation of small parcels within the area covered by this application constitutes only a small part of the overall operations of the large common carriers, the bus lines, the Railway Express. The witness for Ryder testified that this segment of its business accounted for less than 1/3 of 1% of its total revenues.

Primarily this concern of the protestants is not based on traffic which they may reasonably anticipate losing, but rather with traffic which might be subject to diversion if this application were granted. In the very words of one of the protestants, there is no way of knowing what portion of such freight will be lost due to diversion, or if any of it will be lost. From a consideration of the entire record, it is apparent that their concerns are more conjecture than anything else.

On the other hand, the record reveals much evidence which would indicate that much of the traffic presently enjoyed by the protestant carriers would not, in fact, be lost through the granting of this application. A witness for the bus lines testified that his company did not expect to lose any business except where shippers required pickup and delivery service, and this was demonstrated to be in less than 2% of the shipments which are presently delivered. Similarly, the traffic from shippers such as the public witnesses who testified on behalf of the bus companies would not be lost. In addition, there is evidence that much of the traffic which applicant proposes to handle is presently moving by parcel post and would not be diverted from the protestant carriers who do not presently enjoy this traffic.

Finally, we have the testimony of a number of public witnesses who appeared in support of this application to the effect that they did not propose to divert existing traffic from the protestants except in cases where these carriers were presently unable to meet their needs. Other witnesses indicated that they are using their own vehicles, and one has curtailed his sales efforts due to lack of transportation facilities. This traffic will not be diverted from the protestants. From the record as a whole, we find little competent substantial evidence which would establish that the granting of this certificate will have any substantial or appreciable adverse effect upon existing transportation facilities within the territory sought to be served or upon transportation as a whole within the said territory.

On the other hand, if unsatisfactory service is the cause of such diversion, then public convenience and necessity is a higher concern to this commission than the loss of traffic to existing carriers. The Supreme Court of Florida has stated that "the mere fact that an existing operation is not successful, and may be

rendered even less successful by issuance of a new and somewhat competing certificate, does not in itself preclude the issuance of such new certificate, if the commission finds on proper evidence that in spite of this harmful effect upon existing facilities the public convenience and necessity demands issuance of the new authority." Tamiami Trail Tours, Inc. v. King, 143 So. 2d 313.

The court further held that the effect on existing transportation facilities is not determinative of the issuance of a new certificate, but only that it is one of the standards that this commission should consider, and that the possible harmful effect on existing carriers, of itself, did not preclude the issuance of a new certificate if public convenience and necessity demanded it. The benefit to the public convenience would outweigh any possible harmful effect to the protestants. We must be ever mindful of the requirements of the law, as stated by the Supreme Court of Florida, that "public convenience and necessity is the pole star which should guide the commission in the granting of an application".

Based upon the aforesaid reasons and the entire record in this proceeding, the commission finds that public convenience and necessity require the granting of this application; that the granting of this application, thereby authorizing the applicant, Rapid Delivery Service, Inc., to serve the entire territory covered by this application is in the public interest; that the transportation services presently provided by the protestants are insufficient to meet the public needs; and that the granting of this application will have no appreciable adverse effect upon transportation facilities within the territory sought to be served by the applicant or upon transportation as a whole within said territory.

Prior to the public hearings held in this proceeding and again at the conclusion thereof, motions to dismiss this application were filed by certain of the protestants. We have considered these motions and the replies thereto. In light of the views expressed herein, as well as the applicable rules of this commission and laws of Florida, we find that said motions are not well taken, and being without merit, should be denied.

Therefore, in consideration thereof, it is ordered that all motions to dismiss this application be and the same are hereby denied.

It is further ordered that the application of Rapid Delivery Service, Inc. for extension of its certificate of public convenience and necessity no. 418 so as to authorize the transportation in common carriage of packaged and unpackaged general merchandise in a parcel delivery service over irregular routes on irregular schedules, to, from and between all points and places in Dade, Broward, Collier, Palm Beach, Hendry, Lee, Charlotte,

42

Glades, Martin, St. Lucie, Okeechobee, Highlands, DeSoto, Hardee, Sarasota, Manatee, Pinellas, Hillsborough, Polk, Osceola, Indian River, Brevard, Orange, Seminole, Lake, Sumter, Pasco, Hernando, Citrus, Marion, Volusia, Flagler, Putnam, Alachua, Bradford, Clay, St. Johns, Duval and Nassau counties, Florida, subject to the following: limited to parcels weighing not more than 75 pounds and to shipments not weighing more than 75 pounds, moving from one shipper to one consignee in the same vehicle on the same day; and further restricted against the transportation of parcels in intracounty shipments within Dade County, during the effective life of the interchange system implemented by the Florida Railroad and Public Utilities Commission in its orders nos. 4428 and 4428-A; and further restricted against the transportation of shipments wholly within Hillsborough, Pinellas, and Polk counties which both originate and terminate in said three counties; be and the same is hereby granted, and said certificate is so extended.