SHEPHERD, J.
 

 This case arises out of a refusal by the School District of Miami-Dade County (the District) to permit a non-union teacher from having representation at a performance review proceeding. If the teacher had been a union member, he would have been permitted to have representation. The appellant, United Teachers of Dade (UTD), insists the District acted alone. The teacher appellee, Shawn Beightol, argues the District did not act alone, but rather UTD “caused” the District’s action, and UTD’s actions were unlawful within the meaning of sections 447.501(2)(a) and (b), Florida Statutes (2010). After taking testimony, a Commission-designated hearing officer agreed with Beightol. The Florida Public Employees Relations Commission (PERC) found competent substantial evidence to support the recommendation of the hearing officer and entered a final order adopting the recommendation. We affirm this order. We disagree with the hearing officer and PERC only in their decision not to award attorney fees to Beightol for his trouble.
 

 A brief summary of the procedural background and history of this case is necessary to explain our decision.
 

 Procedural Background and History
 

 UTD is the exclusive bargaining agent for all teachers employed by the District, including non-union members. The District and UTD were signatories to a collec
 
 *1005
 
 tive bargaining agreement (CBA) from July 1, 2006, to June 30, 2009, and are signatories to a successor CBA in effect from July 1, 2009, to June 30, 2012. Both the predecessor and successor contracts provide for eonferences-for-the-record (CFRs), which are formal meetings between an employee and his or her worksite administrator or representative from the Office of Professional Standards (OPS) to address performance standards or the results of an investigation. Article XXI, “Employee Rights and Due Process, Subsection 1A., Conference-for-the-Record,” states, in pertinent part:
 

 2. Any employee summoned ... for a Conference-for-the-Record which may lead to disciplinary action or reprimand, shall have the right to request Union representation and shall be informed of this right. If Union representation is provided, the employee shall have the right to be accompanied at the Conference-for-the-Record by up to two representatives of the Union and shall be informed of this right.
 

 3. Employees shall be given two days’ notice and a statement of the reason for the conference, except in cases deemed to be an emergency. When Union representation is requested, and the employee is to be represented by the Union, the Conference-for-the-Record must be scheduled at a time when Union representation (building steward, where appropriate) can be present.
 

 [[Image here]]
 

 5. Where Union representation is provided herein, the employee shall be represented by the bargaining agent. The bargaining agent shall have the right to refuse representation in accordance with its own internal, nondiscriminatory rules. An employee may not be represented by an attorney in a eonference-for-the-record.
 

 On September 29, 2009, Beightol received a notice summoning him to a CFR scheduled for October 7, 2009. Upon receiving the notice, Beightol requested representation by Professional Educators Network (PEN), a professional organization of which Beightol was a member. Beightol also requested representation from UTD, but UTD’s Deputy Chief of Staff denied representation because Beigh-tol was not a dues-paying member of the union. OPS also denied Beightol’s request to have a PEN representative, stating he had a right to request union representation, but that any non-union representative would have to sit in the waiting area and could periodically consult with Beightol outside the hearing room. At the CFR on October 7, Beightol’s non-attorney PEN representative was refused entry to the hearing room. Beightol’s unfair labor practice charges followed.
 

 Analysis
 

 The charges in this case were brought pursuant to sections 447.501(2)(a) and (b) of the Florida Public Relations Act, Chapter 447, Part II, of the Florida Statutes. These sections of the Act prohibit a public employee organization from:
 

 (a) Interfering with, restraining, or coercing public employees in the exercise of any of their rights guaranteed them under [Chapter 447, Part II, of the Florida Statutes]....
 

 (b) Causing or attempting to cause a public employer to discriminate against an employee because of the employee’s membership or non-membership in an employee organization ....
 

 § 447.501(2).
 

 The issue on appeal is whether substantial competent evidence supports the findings of the hearing officer. If the record contains substantial competent evidence in
 
 *1006
 
 support of the findings, neither PERC nor an appellate court can overturn the hearing officer’s findings based upon disputed issues of fact.
 
 Boyd v. Dep’t of Revenue,
 
 682 So.2d 1117, 1118 (Fla. 4th DCA 1996).
 

 UTD first seeks refuge in the agreement itself, emphasizing that the provision it negotiated does not require the District’s policy of excluding non-union representatives from CFRs. Here, UTD fails to appreciate its legal obligation to the bargaining unit. UTD is the bargaining agent for all employees in the bargaining unit, union members and non-union members alike.
 
 [1]
 
 UTD may not prefer its dues-paying members over non-dues-paying members in its representation and negotiations.
 
 See
 
 § 447.501(2)(b). By the same token, it cannot in good faith negotiate, maintain or condone a contract provision which it knows to create and perpetuate a system which requires employees to become UTD members to obtain a benefit.
 
 See
 
 § 447.501(2)(b);
 
 Spiegel v. Dade Cnty. Police Benevolent Ass’n,
 
 14 FPER ¶ 19092 (1988). Article XXI, section 1A, subsections 2, 8, and 5 of the collective bargaining agreement provide a benefit available only to UTD dues-paying members in that only dues-paying UTD members are entitled to have up to two UTD representatives at a CFR. UTD neglected to negotiate a comparable contractual right for bargaining unit employees who are not dues-paying UTD members. The hearing officer found, and PERC agreed, that UTD’s motivation in negotiating, administering, and maintaining Article XXI, section 1(A) of the CBA was “to create and perpetuate a system which requires employees to become UTD members to obtain the right of representation at a CFR.” Competent substantial evidence supports the hearing officer’s findings. ■
 

 The contract provision at issue in this case has been part of the CBA since some time prior to 1995. UTD Deputy Chief of Staff, Michael Molnar, testified it has long been UTD policy to refuse union representation to non-union members who are summoned to a CFR. Joyce Castro, a district director of OPS, testified that the District prohibits non-union employees from having representation at a CFR.
 
 [2]
 
 Deputy Chief of Staff Molnar confirmed that UTD is well aware the District’s policy of refusing representation to non-union members of the bargaining unit results in a lack of representation for non-union members at a CFR. Furthermore, Beightol’s own testimony confirms this practice has long existed and been condoned by UTD. In February 2008, Beightol, then a UTD steward, attempted to represent a non-UTD member at a CFR. UTD would not allow him to represent the non-member during the conference-for-the-record and neither would the District.
 

 UTD next argues it had nothing to do with the District’s policy of not allowing employees who are not union members to have a non-union representative at their CFRs. UTD relies on the fact that no evidence has been found of specific discussions between UTD and the District relating to the implementation of the discriminatory provision. However, as UTD must know, “unless the employer is a latter day George Washington, [direct evidence of] discrimination is as difficult of proof as
 
 *1007
 
 who chopped down the cherry tree.”
 
 Thornbrough v. Columbus & Greenville R.R. Co.,
 
 760 F.2d 633, 638 (5th Cir.1985);
 
 see also Sch. Bd. of Leon Cnty. v. Hargis,
 
 400 So.2d 103, 107 (Fla. 1st DCA 1981) (finding direct evidence of discriminatory intent is “seldom present”). For this reason, it is well established in the field of discrimination that circumstantial evidence evaluated in the light of common experience may be relied upon to establish discriminatory motive.
 
 See Grigsby v. Reynolds Metals Co.,
 
 821 F.2d 590, 594 (11th Cir.1987) (noting that “[t]he McDonnell Douglas-Burdine proof structure ‘was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination’ ”).
 

 In this case, the plain language of the CBA, in tandem with evidence of the District’s and UTD’s implementation of that language, results in the discriminatory conferral of a benefit on union members. OPS District Director Joyce Castro testified she understood the Article XXI “Employee Rights and Due Process” subsections at issue in this case only allow for UTD representation at CFRs, and during the years she has been a District Director, UTD had never appeared on behalf of a non-union member at a CFR. UTD Deputy Chief of Staff Michael Molnar testified that as long as he has been employed by UTD, since 1995, it has been UTD policy to refuse union representation to non-union members at a CFR, with full knowledge non-union members would have no representation at CFRs. During these years, UTD negotiated at least five successor contracts with the District. It never sought to rectify the discriminatory effect of Article XXI, section 1A on non-union members. Our task on review of the final order before us is directed to whether there is competent substantial evidence in the record to support the hearing officer’s finding of intent, approved by PERC in its Final Order, not whether there is substantial competent evidence to support a different or contrary finding.
 
 See Tamiami Trail Tours, Inc. v. King,
 
 143 So.2d 313, 316 (Fla.1962). Based upon the record before us, we find there is substantial competent evidence in the record to support the decision of the hearing officer in this case. Only a willing suspension of belief would liberate us to accept UTD’s urging of a different or contrary finding.
 

 Although PERC correctly determined UTD committed an unfair labor practice, it erred in denying Beightol an award of attorney fees and costs. Under section 447.503(6)(c), Florida Statutes (2010), “the commission may award to the prevailing party all or part of the costs of litigation, reasonable attorney fees, and expert witness fees whenever the commission determines that such an award is appropriate.” Such an award is appropriate where the party in violation knew or should have known that its conduct violated established law.
 
 City of Delray Beach v. Prof'l Firefighters of Delray Beach,
 
 636 So.2d 157, 163 (Fla. 4th DCA 1994). UTD knew or should have known that its conduct in this case violated established law. Florida is a right-to-work state. Those who work in this state have a constitutionally protected right to refrain from joining a labor organization.
 
 See
 
 art. I, § 6, Fla. Const.;
 
 see also
 
 § 447.301, Fla. Stat. (2010). The Florida legislature has enacted laws expressly designed to protect public employees from interference and coercion in the exercise of this right.
 
 See
 
 § 447.501(2)(a). PERC also has been vigilant in protecting non-union members of a bargaining unit from being treated differently by their bargaining agent.
 

 
 *1008
 
 The seminal PERC decision in this area is
 
 Spiegel v. Dade County Police Benevolent Ass’n,
 
 14 FPER ¶ 19092 (1988). In
 
 Spiegel,
 
 the Dade County Police Benevolent Association (Dade PBA) and the City of Hialeah entered into a collective bargaining agreement which allowed employees to select from one of two health insurance programs: Option A was available to any member of the bargaining unit, while Option B was available only to Dade PBA members. Option B provided benefits which were superior to those provided in Option A. In a fashion uncannily parallel to the case before us, the hearing officer in
 
 Spiegel
 
 described the central issue in the case to be
 

 whether it is an unlawful encouragement to join the union and an act of interference, restraint or coercion of public employees’ right to ‘refrain from forming, joining or participating in an employee organization for a certified union to maintain and administer a contractual provision providing for optional health insurance exclusively for its members.’
 

 14 FPER ¶ 109092, at 228. Applying case law rising under the National Labor Relations Act, 29 USCA sections 158(a)(1), (2), (8), and (b)(1)(A) and (2), both the hearing officer and PERC “[found] the Dade PBA guilty of committing an unfair labor practice by administering and maintaining a contract provision which provided benefits to its members which are not available to non-members.” 14 FPER ¶ 109092, at 223.
 
 Spiegel
 
 is distinguishable from our case only in that the discrimination there was apparent on the face of the collective bargaining agreement. However, as we have demonstrated, a party cannot escape judgment simply because no direct evidence is available to the party seeking relief. The evidence before the hearing officer in our case included not only a provision of the collective bargaining agreement, but also competent substantial evidence of the District’s and UTD’s implementation of the provision. Both the hearing officer and PERC correctly relied upon
 
 Spiegel
 
 in reaching their respective decisions. The logic and reasoning found in
 
 Spiegel
 
 are directly applicable to the facts of our case.
 

 UTD argues that
 
 Spiegel
 
 is inapplicable to the knowledge element of the attorney fee and cost issue because it was decided twenty-three years ago and has not been cited by a court. However, as counsel for UTD agreed in oral argument,
 
 Spiegel
 
 is readily discoverable through computer assisted research commonly available to lawyers and law firms. We are unaware of any statute of limitations applicable to PERC decisions and opinions.
 

 In approving the hearing officer’s decision not to award attorney fees and costs to Beightol, PERC mistakenly thought Beightol did not bring
 
 Spiegel
 
 to the attention of the hearing officer. That is not so. Beightol brought
 
 Spiegel
 
 to the attention of the hearing officer both during the proceedings and in his proposed final order. This oversight formed the substantial basis for PERC’s denial of an award of attorney fees and costs to Beightol in this proceeding. As we have shown,
 
 Spiegel
 
 is the seminal case prohibiting labor organizations from encouraging membership in a union by providing union members with superior contractual privileges. The prohibition is an intuitively obvious one, about which UTD should need little formal guidance. However,
 
 Spiegel,
 
 in the books now for twenty-three years, resolves all doubt concerning whether UTD knew or should have known it violated established law. Beightol is entitled to an award of his attorney fees and costs in this case.
 

 Accordingly, we affirm that portion of the final order finding that UTD committed an unfair labor practice, but reverse
 
 *1009
 
 that portion of the final order denying Beightol his attorney fees and costs.
 

 Affirmed in part, reversed in part and case remanded with directions.
 

 [1]
 

 . The UTD bargaining unit — the employees it claims to represent — includes all instructional staff, paraprofessionals, and office staff employed by the District. Sixteen thousand of these employees have elected not to join the union.
 

 [2]
 

 . However, a non-union member’s representative is allowed to sit in the reception area, and the employee may consult with his or her representative in the reception area as often as the employee desires.