PER CURIAM.
In two cases involving the same issues we have been petitioned by Wells Fargo Armored Service Corporation and Southern Armored Service, Inc., to review an order of the Florida Public Service Commission granting a certificate of public convenience and necessity to Armored Express Service, Inc., the applicant, to transport in common carriage money, securities and other valuables to and between all points and places in Dade County.
Each of the two petitioners holds a certificate of public convenience and necessity to engage in transportation of similar valuables between all points and places in Florida over irregular routes. They were protestants at the hearing of the application of Armored Express Service, Inc.
Applicant, prior to submitting its application, had been operating in the City of Miami and adjoining municipalities and suburban territory pursuant to the exemption in F.S. § 323.29(1), F.S.A.
A careful review of the evidence discloses its paucity in measuring up to the statutory tests which are applied when an applicant seeks a certificate of public convenience and necessity to operate in an area where there are outstanding certificates already issued to other operating carriers.
Of applicant’s sixteen witnesses at the hearing on the application, we find four limited their testimony to matters other than the possible need of an additional armored carrier; another four testified exclusively regarding the area exempt from the jurisdiction of the Commission (see F.S. § 323.29(1), F.S.A.) ; a ninth testified only with respect to the need for additional armored car service in Broward County, which county area applicant eliminated from its application; a tenth believed there should be a second carrier, basing his belief solely on his opinion that competition would improve service; an eleventh had invested money in applicant because he believed another carrier was needed and a profit could be made in the business; a twelfth was an advocate of competition who wanted to bargain for rates and to help applicant; a thirteenth was dissatisfied because Wells Fargo’s drivers did not telephone reports of his employees’ tardiness and had received from applicant an offer of reduced unit prices; a fourteenth without basis of any kind testified that he “determined there was a great need in Dade County”; a fifteenth testified that Wells Fargo’s service was not “altogether satisfactory” because “in some cases” there had been late pickups and he thought another carrier was desirable and necessary, but would not commit his company to using another one; and the sixteenth, who also was an advocate of competition, was inconvenienced by an arrangement made with him on behalf of Wells Fargo by two employees who subsequently became president and operating vice-president of applicant.
This evidence is meager in its substance in clearly demonstrating a definite need for additional armored carrier service in Dade County. Much of it went to support the thesis that competition is a desirable thing in theory but failed to prove that existing armored carrier service in the county was inadequate and as a result competition by another carrier was necessary.
Witnesses appearing for the existing armored carriers testified the transportation services provided by these carriers were satisfactory.
The Commission in its order granting the certificate to applicant admitted that the case made for additional service in Dade County to be furnished by applicant “is not the strongest case ever presented to this Commission.” Also, in its order the Commission applied to the hearing testimony a rather singular test to the effect that “preponderance of the evidence is merely something more than half.” In 13 Fla.Jur., “Evidence,” § 431, decisions of this Court defining “preponderance of evidence” are summarized. They negate the view that *421 the greater number of witnesses rather than the greater weight of the evidence is determinative of such preponderance.
We advert to the recent case of Southern Armored Service, Inc. v. Mason (Fla.), 167 So.2d 848, which made evidentiary findings and stated principles of law that appear decisive of the facts and issues herein. In reviewing the evidence in that case we said: (text 851)
“Officials of two banks testified that they had terminated Rasdale’s services [an existing armored carrier] because of loss of cash letters in March 1962. One testified his bank would not use Rasdale’s services again, but then admitted that it had been doing so. An official of another bank testified that it had used Rasdale’s services, but ceased because it was not economically satisfactory.
“All of the witnesses testified that Ras-dale’s services were satisfactory, except for the losses of cash letters.
“No witness testified that one armored car service was not sufficient to supply needed service, but most of the witnesses stated it would be convenient and desirable, both for scheduling of runs and for rates, to have two competing services.
“[5] We think of no circumstance in which it would not be desirable and convenient to have more than one carrier serve an area, but as this Court observed in Seaboard Air Line Ry. v. Wells, 1931, 100 Fla. 1631, 131 So. 777, it is not enough to show that another competing carrier will serve the convenience of some individuals. There must be a showing of reasonable necessity also.
“[6] It is the policy of the law to avoid duplication of services unless it be affirmatively shown that such is required by public convenience and necessity. Central Truck Lines v. Railroad Commission, supra. [118 Fla. 555, 160 So. 26.]
“Another aspect of the order under assault buttresses our decision that Armored Express’ certificate should not have been extended.
“Section 323.03(3) F.S.A. requires that the Commission consider the effect which granting of the extended authority will have on existing facilities in the affected area. In its order the Commission found that extension of Armored Express’ authority would have no appreciable adverse effect on existing carriers. The record does not support this finding.”
Reverting to the evidence summarized above in support of the applicant herein and considering it in the light of the findings and legal principles in the last cited case discloses it, too, fails to support the proposition that the existing “armored car service was not sufficient to supply needed service” although some of the witnesses for applicant testified “it would be convenient and desirable * * * to have two competing services.” Further, the fact “another competing carrier will serve the convenience of some individuals” is insufficient unless coupled with “a showing of reasonable necessity [public] also” which latter showing was not made to appear in this case. Furthermore, there is nothing in the evidence establishing the fact the granting of the certificate to applicant “would have no appreciable adverse effect on existing carriers.”
We appreciate the frustration encountered by the Commission in its laudable desire to better serve the public by promoting armored carrier competition and curtailing monopoly. It regrets in its order that statutorily it only regulates transportation by armored carriers but not their rates, adding, “As a practical effect, therefore, the Commission is in the position of granting to a carrier a monopoly operation as a public utility without the concomitant safeguard of rate regulation.” In this case the Commission obviously seeks to alleviate its frustration by granting a certificate to a competing armored carrier, but unfortu *422 nately for the Commission here again -it is hobbled because the factual predicate for the additional service is not sufficient to satisfy the statutory standards. Only the Legislature can modify the existing regulations in this sphere of public carrier transportation if in its wisdom it deems modification appropriate.
The petitions are granted and the order of the Florida Public Service Commission quashed.
It is so ordered.
THORNAL, C. J., and THOMAS, O’CONNELL, ERVIN and BARNS (Retired), JJ., concur.
ROBERTS, J., dissents.